UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE MARQUEZ,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES; BUREAU OF PRISONS; DAVID L. YOUNG; JOHN DOE #1; JANE DOE #1; SUPERVISOR JOHN DOE #2,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 3:18-cv-0434-CAB-NLS<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 5]; AND**<br><br>**(2) SUA SPONTE DISMISSING CLAIMS FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND § 1915A(b)(1)** |

Steve Marquez ("Plaintiff"), an inmate housed at the Larry D. Smith Correctional Facility, has filed a civil complaint pursuant to 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claim Act ("FTCA") (ECF No. 1). Plaintiff has also filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 5).

/ / /

/ / /

1

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee. *See* 28 U.S.C. § 1914(a). An action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, if the plaintiff is a prisoner and he is granted leave to proceed IFP, he remains obligated to pay the full entire fee in "increments," *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Under 28 U.S.C. § 1915, as amended by the Prison Litigation Reform Act ("PLRA"), prisoners seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for the . . . six-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the prisoner's account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

In support of his IFP Motion, Plaintiff has submitted a certified prison certificate issued by the Larry D. Smith Correctional Facility which attests as to his trust account activity pursuant to 28 U.S.C. § 1915(a)(2) and S.D. Cal. CivLR 3.2. *Andrews*, 398 F.3d at 1119. Plaintiff's trust account activity shows that he had a current available balance of only $0.09 at the time he filed his Complaint. *See* 28 U.S.C. § 1915(b)(4) (providing that

"[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay [an] initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available.").

Therefore, the Court GRANTS Plaintiff's Motion to Proceed IFP (ECF No. 5), and assesses no initial partial filing fee per 28 U.S.C. § 1915(b)(1). However, the Watch Commander at the Larry D. Smith Correctional Facility is directed to collect the entire $350 balance of the filing fees mandated by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II. Screening Pursuant to 28 U.S.C. § 1915(e) and § 1915A(b)

### A. Standard of Review

Notwithstanding IFP status or the payment of any partial filing fees, the PLRA also obligates the Court to review complaints filed by all persons proceeding IFP and by those, like Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," "as soon as practicable after docketing." *See* 28 U.S.C. § 1915(e)(2), (h), § 1915A(a)-(c). Under these provisions of the PLRA, the Court must sua sponte dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

All complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by

3

mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)"). On the other hand, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In addition, the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). However, it may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B.  Plaintiff's Allegations**

On August 13, 2016, Plaintiff was "booked into Metropolitan Correctional Center ("MCC") on alleged sex offense charges." (Compl. at 4.) During his classification interview, Plaintiff claims Defendant John Doe #1 made comments towards him "such as 'what a great guy' and 'what an upstanding citizen.'" (*Id.*) Despite being aware of the

nature of the charges against Plaintiff, John Doe #1 "failed in duty to protect him from unreasonable risk or harm by refusing his multiple requests to be placed in protective custody." (*Id.*) Instead, Plaintiff was placed in "general population" by John Doe #1 who "handed the Plaintiff an emergency contact form" to be used "when something happens" to Plaintiff. (*Id.* at 4-5.) John Doe #1 "ignored the Plaintiff's pleas and instead instructed Plaintiff to lie to the other inmates about his alleged charges." (*Id.* at 5.)

Plaintiff "learned about the prison grievance systems and requested a form from a prison official." (*Id.* at 6.) However, Plaintiff never received a form grievance. (*Id.*) Plaintiff then asked Defendant John Doe #2 for a grievance form but was told "grievances are only for emergencies." (*Id.*) Plaintiff was told to "make an appointment with the counselor to be moved." (*Id.*)

Before Plaintiff was able to speak with the counselor, he was "approached by several inmates." (*Id.*) One inmate told Plaintiff that they were going to "break" Plaintiff, while another inmate told him that if "Plaintiff doesn't comply with everything they said, they would take him into the restroom and 'take care of him.'" (*Id.*) These inmates then "moved" Plaintiff to a "more private part of the dorm where they were all housed, and they began to physically torture him by forcing him to perform extreme physical exertion until they told him to stop." (*Id.* at 6-7.) Out of "extreme fear for his life and safety," Plaintiff "complied." (*Id.* at 7.)

Plaintiff was "forced" to complete "countless repetitions of squats" which caused him to feel "dizzy, fatigue, exhausted" and he ultimately "collapsed." (*Id.*) Plaintiff was "constantly reminded" by other inmates "what would happen if he stopped." (*Id.*) Plaintiff "collapsed" again and after the second time, the inmates "laughed at him and began to make fun of him and forced him to get back up and continue." (*Id.*) Plaintiff "struggled to get back to his feet while experiencing unbearable pain." (*Id.*) Plaintiff then "collapsed a third time and was completely incapacitated." (*Id.*) Plaintiff "could not move or feel his legs." experienced "extreme levels of fatigue and was in and out of

5

consciousness." (*Id.* at 7-8.) At this point, the "other inmates laughed at Plaintiff, made insulting comments and walked away." (*Id.* at 8.)

Plaintiff "remained in pain and incapacitated in the same location for 30 minutes" until he was able to "make it back to his bunk and remained there until the next day, unable to move." (*Id.*) Plaintiff "began to experience more severe pain, fever, cold sweats, severe swelling of his face and body, vomiting, loss of appetite, urination of blood, shortness of breath, complete loss of leg function, dizziness, headache, and mental and emotional anguish." (*Id.*)

Plaintiff "notified an official of everything that happened." (*Id.*) However, this official responded by stating "that's crazy" and failed to move Plaintiff while telling Plaintiff to "make an appointment with medical staff to be seen." (*Id.*) Plaintiff "continued to urinate blood" and notified a nurse who "scheduled him to see medical staff later that day where they evaluated him." (*Id.* at 8-9.) Plaintiff was "called back" the next day and told that his condition was "very serious." (*Id.* at 9.) They placed Plaintiff on an "emergency I.V. for a couple hours" and then "escorted" him back to the "dorm where the incident occurred." (*Id.*)

The next day, Plaintiff's condition was seen to be "progressively getting worse" and they placed him on another "I.V. for several hours." (*Id.*) "Hours later, Plaintiff was escorted back to his dorm" and "continued to suffer more severe symptoms and fear for his life." (*Id.*) The following day, Plaintiff was called back again to the nurses office and was told that his "condition was now beyond the capability of the prison medical staff." (*Id.* at 10.) Plaintiff was transferred to Alvarado Hospital where he was housed for a week. (*See id.*)

Plaintiff was examined by a "Kidney Specialist" who informed Plaintiff that due to the "physical torture," Plaintiff was in "severe kidney failure." (*Id.*) He informed Plaintiff that Plaintiff's kidneys "completely shut down and that they would never fully recover." (*Id.*) In addition, there was a possibility that "Plaintiff would be on dialysis for

6

life and that death is a realistic possibility." (*Id.*) In addition to the kidney failure, Plaintiff "suffered pneumonia and heart complications." (*Id.* at 11.) After Plaintiff was discharged, he was taken back to MCC "where he was interviewed once more by a classification official." (*Id.* at 12.) Plaintiff explained to this individual that he had "previously been negligently housed and as a result he was injured by other inmates." (*Id.*) However, this official "chose to ignore Plaintiff's request and housed him in the same dorm on the same bunk where the attack occurred." (*Id.*)

### C. 42 U.S.C. § 1983

First, "[t]o establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace*, Inc., 698 F.3d 1128, 1138 (9th Cir. 2012) (emphasis added). Plaintiff is a former federal prisoner seeking damages against the Bureau of Prisons ("BOP") and individual federal officers. He fails to allege any of these entities, officials, or employees acted under color of state law. Therefore, he fails to state a claim under § 1983. *Tsao*, 698 F.3d at 1138.

### D. Bivens

However, Plaintiff also brings this action *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* is the "federal analogue" to § 1983. *Hartman v. Moore*, 547 U.S. 250, 254, 255 n.2 (2006).

However, to the extent he seeks to hold the United States or the BOP, liable for damages incurred under color of federal law, he fails to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 679. A Bivens action may only be brought against a federal official in his or her individual capacity. *See Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987). A *Bivens* claim cannot stand against the United States, or any of its departments, offices, or agencies. *See FDIC v. Meyer*, 510 U.S. 471 (1994). "[T[he purpose of Bivens is to deter the officer," not the agency. *Id.* at 485. Indeed, the Supreme

Court has held that "[a]n extension of Bivens to agencies of the Federal Government is not supported by the logic of Bivens itself." *Id.* at 486.

Accordingly, to the extent Plaintiff's Complaint alleges constitutional violations on the part of the United States or the BOP, his Complaint fails to state a claim upon which *Bivens* relief may be granted and must be dismissed pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1127; *Rhodes*, 621 F.3d at 1004.

### E. Eighth Amendment failure to protect claims

The Court finds the FTCA claims and the Eighth Amendment failure to protect allegations in Plaintiff's Complaint are sufficient to survive the "low threshold" for proceeding past the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012; *Iqbal*, 556 U.S. at 678. The Eighth Amendment requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'" *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[P]rison officials have a duty [under the Eighth Amendment] ... to protect prisoners from violence at the hands of other prisoners.")

### F. Vicarious Liability

Plaintiff also seeks relief against Defendant Young, whom he alleges is the "Warden" at MCC and "is legally responsible for the operation of MCC and for the welfare of all inmates in that prison." (Compl. at 2-3.)   Therefore, the Court will assume that Young acted under color of federal law for purposed of establishing *Bivens* liability; however, Plaintiff's Complaint still fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" against Defendant Young. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676; *see also Jones v. Community*

8

*Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim). Thus, Plaintiff must include in his pleading sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and describe personal acts by each individual defendant which show a direct causal connection to a violation of specific constitutional rights. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

As currently pleaded, Plaintiff's Complaint fails to include any factual content to suggest that Defendant Young personally participated in, directed, or caused him to suffer any constitutional injury. Plaintiff does he explain how Young violated Plaintiff's constitutional rights. *See Iqbal*, 556 U.S. at 677.

Therefore, Plaintiff has failed to state a claim upon which relief can be granted as to Defendant Young. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b); *Lopez*, 203 F.3d at 1127; *Rhodes*, 621 F.3d at 1004.

### G. Leave to Amend

Because the Court has determined that some of Plaintiff's claims survive the sua sponte screening process, the Court will give Plaintiff the opportunity to either: (1) notify the Court of the intent to proceed with his Eighth Amendment claims against Defendants John Does only and the FTCA claims against the United States; or (2) file an amended pleading correcting all the deficiencies of pleading identified by the Court in this Order. Plaintiff must choose one of these options within forty-five (45) days from the date this Order is filed. If Plaintiff chooses to proceed as to his claims against John Does and United States only, the Court will issue an Order directing the U.S. Marshal to

effect service[1] of his Complaint and dismiss the remaining claims and defendants.

**III.     Conclusion and Order**

Good cause appearing, therefor, IT IS HEREBY ORDERED that:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 5).

2. **DIRECTS** the Watch Commander of the Larry D. Smith Correctional Facility, or his designee, to collect from Plaintiff's inmate trust account the $350 filing fee owed by forwarding monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and sending those payments to the Clerk of the Court each time the amount in his account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court is directed to serve a copy of this Order on the Watch Commander, Larry D. Smith Correctional Facility, 1627 S. Hargrave Street, Banning, California 92220.

/ / /

/ / /

---

[1] Plaintiff must, of course, identify the Defendants he references only as "John Does," by their true names and substitute those individual persons in place of each unnamed Doe by amending his Complaint to identify each of them before the United States Marshal will be able to execute service upon them. *See Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (1995) (Doe defendants must be identified and served within [90] days of the commencement of the action against them); FED. R. CIV. P. 15(c)(1)(C) & 4(m). Generally, Doe pleading is disfavored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). And it is in most instances impossible for the United States Marshal to serve a party identified only as a Doe. *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant.").

4. The Court **DISMISSES** Plaintiff's claims against Defendants Bureau of Prisons and David L. Young for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

5. The Court **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (1) Notify the Court of the intention to proceed with the Eighth Amendment claims against John Doe Defendants and the FTCA claims against the United States only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

**IT IS SO ORDERED**.

Dated: April 25, 2018

Hon. Cathy Ann Bencivengo
United States District Judge