UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE MARQUEZ<br><br>                                Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>                                Defendants. | Case No.:  18-CV-00434-CAB-NLS<br><br>**ORDER ON MOTION TO DISMISS**<br><br>[Doc. No. 28] |

This matter comes before the Court on Defendant the United States of America's motion to dismiss for lack of subject matter jurisdiction. [Doc. No. 28].  The motion has been fully briefed, and the Court finds it suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1).   For the following reasons, Defendant's motion is **GRANTED.**

## I.      Allegations of Complaint

On August 13, 2016, Plaintiff Steve Marquez was "booked into Metropolitan Correctional Center ("MCC") on alleged sex offense charges." (Compl. at 4.) During his classification interview, Plaintiff claims Defendant John Doe #1 made comments towards him "such as 'what a great guy' and 'what an upstanding citizen.'" (*Id.*) Despite being aware of the nature of the charges against Plaintiff, John Doe #1 "failed in duty to protect him from unreasonable risk or harm by refusing his multiple requests to be placed in

protective custody." (*Id.*) Instead, Plaintiff was placed in "general population" by John Doe #1 who "handed the Plaintiff an emergency contact form" to be used "when something happens" to Plaintiff. (*Id.* at 4-5.) John Doe #1 "ignored the Plaintiff's pleas and instead instructed Plaintiff to lie to the other inmates about his alleged charges." (*Id.* at 5.)

Plaintiff "learned about the prison grievance systems and requested a form from a prison official." (*Id.* at 6.) However, Plaintiff never received a form grievance. (*Id.*) Plaintiff then asked Defendant John Doe #2 for a grievance form but was told "grievances are only for emergencies." (*Id.*) Plaintiff was told to "make an appointment with the counselor to be moved." (*Id.*)

Before Plaintiff was able to speak with the counselor, he was "approached by several inmates." (*Id.*) One inmate told Plaintiff that they were going to "break" Plaintiff, while another inmate told him that if "Plaintiff doesn't comply with everything they said, they would take him into the restroom and 'take care of him.'" (*Id.*) These inmates then "moved" Plaintiff to a "more private part of the dorm where they were all housed, and they began to physically torture him by forcing him to perform extreme physical exertion until they told him to stop." (*Id.* at 6-7.) Out of "extreme fear for his life and safety," Plaintiff "complied." (*Id.* at 7.)

Plaintiff was "forced" to complete "countless repetitions of squats" which caused him to feel "dizzy, fatigue, exhausted" and he ultimately "collapsed." (*Id.*) Plaintiff was "constantly reminded" by other inmates "what would happen if he stopped." (*Id.*) Plaintiff "collapsed" again and after the second time, the inmates "laughed at him and began to make fun of him and forced him to get back up and continue." (*Id.*) Plaintiff "struggled to get back to his feet while experiencing unbearable pain." (*Id.*) Plaintiff then "collapsed a third time and was completely incapacitated." (*Id.*) Plaintiff "could not move or feel his legs," experienced "extreme levels of fatigue and was in and out of consciousness." (*Id.* at 7-8.) At this point, the "other inmates laughed at Plaintiff, made insulting comments and walked away." (*Id.* at 8.)

Plaintiff "remained in pain and incapacitated in the same location for 30 minutes" until he was able to "make it back to his bunk and remained there until the next day, unable to move." (*Id.*) Plaintiff "began to experience more severe pain, fever, cold sweats, severe swelling of his face and body, vomiting, loss of appetite, urination of blood, shortness of breath, complete loss of leg function, dizziness, headache, and mental and emotional anguish." (*Id.*)

Plaintiff "notified an official of everything that happened." (*Id.*) However, this official responded by stating "that's crazy" and failed to move Plaintiff while telling Plaintiff to "make an appointment with medical staff to be seen." (*Id.*) Plaintiff "continued to urinate blood" and notified a nurse who "scheduled him to see medical staff later that day where they evaluated him." (*Id.* at 8-9.) Plaintiff was "called back" the next day and told that his condition was "very serious." (*Id.* at 9.) They placed Plaintiff on an "emergency I.V. for a couple hours" and then "escorted" him back to the "dorm where the incident occurred." (*Id.*)

The next day, Plaintiff's condition was seen to be "progressively getting worse" and they placed him on another "I.V. for several hours." (*Id.*) "Hours later, Plaintiff was escorted back to his dorm" and "continued to suffer more severe symptoms and fear for his life." (*Id.*) The following day, Plaintiff was called back again to the nurses office and was told that his "condition was now beyond the capability of the prison medical staff." (*Id.* at 10.) Plaintiff was transferred to Alvarado Hospital where he was housed for a week. (*See id.*)

Plaintiff was examined by a "Kidney Specialist" who informed Plaintiff that due to the "physical torture," Plaintiff was in "severe kidney failure." (*Id.*) He informed Plaintiff that Plaintiff's kidneys "completely shut down and that they would never fully recover." (*Id.*) In addition, there was a possibility that "Plaintiff would be on dialysis for life and that death is a realistic possibility." (*Id.*) In addition to the kidney failure, Plaintiff "suffered pneumonia and heart complications." (*Id.* at 11.) After Plaintiff was discharged, he was taken back to MCC "where he was interviewed once more by a classification official." (*Id.*

at 12.) Plaintiff explained to this individual (Jane Doe #1) that he had "previously been negligently housed and as a result he was injured by other inmates." (*Id.*) However, this official "chose to ignore Plaintiff's request and housed him in the same dorm on the same bunk where the attack occurred." (*Id.*)

## II. Procedural Background

On February 23, 2018, Plaintiff filed a civil complaint pursuant to 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claim Act ("FTCA") against defendants United States, Bureau of Prisons ("BOP"), David L. Young, John Doe #1, John Doe #2, and Jane Doe #1. [Doc. No. 1.] Plaintiff also filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). [Doc. No. 5.]

On April 25, 2018, the Court granted Plaintiff leave to proceed in forma pauperis. [Doc. No. 6.] The Court also dismissed the claims against Defendants Bureau of Prisons and Young finding that Plaintiff had failed to allege facts sufficient to state a claim against any of these Defendants. [*Id.* at 7-9.] However, the Court also found that the allegations against Defendants United States, John Doe #1, Jane Doe #1 and Supervisor John Doe #2 survived screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). [*Id.* at 8.] The Court dismissed Defendants Bureau of Prisons and David L. Young without prejudice, and gave Plaintiff the option of filing a First Amended Complaint in an attempt to cure the pleading deficiencies, or proceed with his Complaint and have the Court direct the United States Marshal to effect service upon Defendants United States, John Doe #1, Jane Doe #1 and Supervisor John Doe #2. [*Id*. at 9-10.]

On May 24, 2018, Plaintiff filed his "Notice of Intention" to proceed with his "Eighth Amendment claims against John Doe #1, Jane Doe #1, John Doe #2 and the FTCA claims against the United States only." [Doc. No. 9.] Therefore, as of May 24, 2018, the only remaining claims are Plaintiff's Eighth Amendment claim against the Doe defendants, and the FTCA claim against the United States.

On February 22, 2019, Defendant United States brought a motion to dismiss the FTCA claim. [Doc. No. 28.] On July 8, 2019, Plaintiff filed an opposition. [Doc. No. 36.] On July 19, 2019, Defendant United States filed a reply. [Doc. No. 37.]

## III.    Legal Standard

The United States holds the privilege of sovereign immunity unless it waives this immunity explicitly by statute. *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012). If a plaintiff's claim fails to allege facts supporting that a statutory waiver of immunity exists in their case, then the federal court lacks subject matter jurisdiction to hear the claim. *Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993) (holding that federal court did not have subject matter jurisdiction over FTCA claim when exception to FTCA granted United States sovereign immunity).

The FTCA constitutes a limited waiver of sovereign immunity for tort claims arising out of the conduct of a government employee. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995). Additionally, the FTCA grants district courts "exclusive jurisdiction of civil actions on claims against the United States…for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b)(1).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F. 3d 1035, 1039 (9th Cir. 2004). In a factual attack, however, the challenger may rely on evidence extrinsic to the complaint. *See id.*

Here, the United States makes a facial attack on jurisdiction by claiming that both officers' alleged behaviors fall within the "discretionary function exception" of the FTCA. [Doc. No. 28 at 5.] The FTCA does not apply to any claim "based upon the exercise or

performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. §2680(a).[1]

The Court exercises a two-part test in determining whether the discretionary-function exception exists. *Alfrey v. U.S.*, 276 F.3d 557, 561 (9th Cir. 2002). First, the Court decides whether the conduct does involve an exercise of choice, or whether a federal statute, regulation or policy instead sets forth a prescribed course of action. *Id.* If there is no prescribed action set forth, the employee's action is considered discretionary. Second, if the conduct is discretionary, the Court considers whether the conduct is of the kind that the discretionary function exception is designed to shield. *Id.* This requires an examination of social, economic, and political policy.

**IV.  Discussion**

**A. FTCA Claim based upon John Doe #1's Original Assignment of Plaintiff to General Population**

In the first step of the discretionary function exception, the Court considers whether there is any protocol or prescribed action for the assignment of inmates to General Population housing rather than Administrative Segregation housing. Plaintiff's argument for liability based upon the alleged actions of John Doe #1 presumes that, based on Plaintiff and John Doe #1's perception of danger in General Population, John Doe #1 had a duty to remove Plaintiff from General Population housing. [Doc. No. 1 at 19.]

The Plaintiff fails to identify in the original complaint a procedure which requires the officer to place an inmate in Administrative Segregation housing. Moreover, in the Plaintiff's opposition to the Defendant's motion, the Plaintiff cites to 28 C.F.R. §115.42, a

---

[1] Alternatively, the United States makes a factual attack by presenting evidence of Plaintiff's intake form which demonstrates that Plaintiff had indicated he was in no immediate need of housing relocation. [Doc. Nos. 28-2, 28-3.] In his opposition, Plaintiff alleges he never signed the intake form. [Doc. No. 36 at 20.] Therefore, the Court declines to reach the factual attack on subject matter jurisdiction.

regulation regarding the use of screening information to assess an inmate's risk of sexual victimization and abuse. However, Section 115.42 requires officers to use intake information to assess risk, but does not require that a certain decision be made. Specifically, the regulation requires officers to then make decisions on a "case-by-case" basis. 28 C.F.R. §115.42. Thus, the regulation instead necessitates an officer's discretionary action, rather than barring it.

Moving onto the second step, the Ninth Circuit has held that, without any additional published protocol, an officer's decision to both assign inmates to housing and respond to threats are discretionary functions. *Alfrey, v. U.S.,* 276 F.3d 557, 564. In *Alfrey*, the plaintiff-inmate had received direct threats prior to being attacked by other inmates, and the officers' chose not to move the Plaintiff from his housing. *Id.* This was found to be a necessary discretionary function of the officers, even in response to the threat, due to a weighing of social, political, and economic policy. *Id.* Here, with even less direct or imminent threat to the plaintiff, the situation fits soundly into the policy reasons for officer discretion set forth by the Ninth Circuit in *Alfrey*.[2] Because the actions of John Doe #1 fall into this same category of discretionary function, the FTCA claim based upon the actions of John Doe #1 is dismissed with prejudice.

**B. FTCA Claim based upon Plaintiff's Request to Move to John Doe #2**

Plaintiff's FTCA claim based upon the allegations regarding John Doe #2 not providing Plaintiff with a form and telling him to see a counselor relate to whether or not to place Plaintiff in administrative segregation and, therefore, fall within the discretionary function. Additionally, Plaintiff identifies no protocol prescribed to or violated by John

---

[2] While the U.S. Supreme Court has not directly addressed whether the discretionary function exception applies to federal prisoners' FTCA claims for injuries by fellow inmates allegedly caused by BOP housing placement decisions, circuit and district courts reviewing such claims have uniformly held that they are barred by the discretionary function exception. *Sarafian v. U.S.*, No. CV14-2777 DDP (KES), 2015 WL 6125430 at *5 (C.D. Cal. August 21, 2015)(citations omitted).

Doe #2.  Thus, the FTCA claim based upon the actions of John Doe #2 is dismissed with prejudice.

### C. FTCA Claim based upon Jane Doe #1's Assignment of Plaintiff After Hospitalization.

Finally, Plaintiff's FTCA claim based upon the alleged actions of Jane Doe #1 after Plaintiff returned from the hospital also fall within the discretionary function, as Plaintiff fails to identify a protocol prescribed to or violated by Jane Doe #1.  In his opposition, Plaintiff argues that Jane Doe #1's actions were intentional and, therefore, not within the realm of discretionary function.  However, as long as the alleged tortious conduct involves a discretionary function, a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort.  *See generally Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994)("That the conduct of the [government] agents may be tortious or motivated by something other than law enforcement is beside the point, as governmental immunity is preserved 'whether or not the discretion involved be abused.' ") (quoting *Johnson v. United States*, 949 F.2d 332, 340 (10th Cir. 1991)).  Therefore, the FTCA claim based upon the actions of Jane Doe #1 is dismissed with prejudice.

### D. Eighth Amendment.

Finally, Plaintiff argues that the discretionary function exception cannot apply to his FTCA claim because the Eighth Amendment prohibits BOP officials from failing to place him in administrative detention.  [Doc. No. 36 at 20.]  However, the Ninth Circuit has held that a plaintiff challenging a discretionary function defense by claiming the Constitution prohibits such discretion must point to a "specific duty under the [Constitution] . . . to support [such] a claim."  *Xue Lu v. Powell*, 621 F.3d 944, 950 (9th Cir. 2010).  *See also Jasso v. U.S. Dep't of Agric. Forest Serv.*, No. CIV S07-2769 GEBEFBPS, 2008 WL 3863503, at *7 (E.D. Cal. Aug. 18, 2008), subsequently aff'd sub nom. *Jasso v. U.S. Forest Serv.*, 376 F. App'x 760 (9th Cir. 2010)(FTCA claim dismissed where plaintiffs failed to explain how Constitution limits the discretionary function).

Here, Plaintiff has failed to cite any authority that the Eighth Amendment provides a constitutional right to be housed in administrative detention upon demand. Therefore, the discretionary function exception is applicable.

**V.      Conclusion**

For the foregoing reasons, the motion to dismiss Plaintiff's FTCA claim for lack of subject matter jurisdiction is **GRANTED**, and Defendant United States is **DISMISSED WITH PREJUDICE**.

The only claims that now remain in the case are the Eighth Amendment claims against John Doe #1, John Doe #2 and Jane Doe #1. However, it has been over a year since Plaintiff filed this lawsuit and he has yet to identify the Doe defendants, despite being advised several times that he must do so. [*See* Doc. No. 6 at 10, n. 1; Doc. No. 10 at 2, n. 1.] Plaintiff shall have until **September 30, 2019**, to **identify the Doe defendants** and file a motion to amend the complaint to name the identified Doe defendants. If no such motion is filed by September 30, 2019, the Doe defendants shall be **DISMISSED WITHOUT PREJUDICE** and the case will be **CLOSED** without further court order.

It is **SO ORDERED**.

Dated:  August 2, 2019

_____
Hon. Cathy Ann Bencivengo
United States District Judge

18-CV-00434-CAB-NLS