RANDY S. GROSSMAN
Acting United States Attorney
George Manahan
Assistant U.S. Attorney
California Bar No. 239130
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7607
Email: George.manahan@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE MARQUEZ, | Case No.: 3:18-cv-00434-CAB-NLS |
| Plaintiff, | INDIVIDUAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED |
| v. | |
| UNITED STATES, et al. | |
| Defendants. | Hearing Date: April 14, 2021 |
| | PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

Individual Defendants C. Rodriguez and L. Kelly (collectively Defendants) hereby move the Court to dismiss the claims against them. A Memorandum of Points and Authorities in support of this motion is provided following the Table of Contents and Table of Authorities.

# TABLE OF CONTENTS

**PAGE**

I.    PROCEDURAL HISTORY ................................................................1

II.   FACTS ALLEGED IN FIRST AMENDED COMPLAINT ........................2

III.  ARGUMENT..................................................................................3

    A. Plaintiff's Claims Against Defendants In Their Official
    Capacities Must Be Dismissed for Lack Of Subject
    Matter Jurisdiction..................................................................4

    B. Plaintiff's Claims Against Defendants in Their Individual
    Capacities Must Be Dismissed for Failure to State A
    Claim Upon Which Relief Can Be Granted..................................4

        1. Legal Standards for Motion to Dismiss For Failure
        to State A Claim Upon Which Relief Can Be Granted.......................4

        2. The Court Should Dismiss Plaintiff's Bivens Claims
        Against Defendants in Their Individual Capacitites
        Since, In The Absence of Congressional Action, The
        Court Should Decline Expanding The Bivens Remedy
        to Cover Claims Such As Plaintiff's .........................................5

            a. Plaintiff's Claims Against Defendants Present
            a New Bivens Context....................................................9

            b. Special Factors Counselling Hesitation Preclude
            Extending a Bivens Remedy to Plaintiff's Claims ...................13

        3. The Court Should Dismiss Plaintiff's Bivens Claims
        Against Defendants in Their Individual Capacities
        Since Defendantws are Entitled to Qualified
        Immunity..................................................................19

            a. Federal Officials are Immune from Suit Unless
            Their Conduct Violates a Clearly Established
            Constitutional Right ....................................................19

            b. Plaintiff Fails to Allege That Defendants Were
            Unconstitutionally "Deliberately Indifferent" by
            Placing Him In The MCC's General Population
            After He Requested To Be Placed In Protective
            Custody ..................................................................21

            c. Defendants Did Not Violate a Clearly Established
            Constitutional Right by Placing Plaintiff in the
            General Population........................................................24

IV.   CONCLUSION ..........................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004)...................................................................15

*Ahmed v. Weyker*,
  No. 18-3461, 2020 WL 7637930
  (8th Cir. Dec. 23, 2020)..........................................................................7, 8

*Ajaj v. United States*,
  No. 15-CV-02849-RM-KLM, 2020 WL 747013
  (D. Colo. Feb. 13, 2020).............................................................................13

*Apodaca v. Bd. of Cty. Commissioners for Curry Cty., New Mexico*,
  No. CV 14-648MCA/CG, 2016 WL 9818321
  (D.N.M. Nov. 30, 2016)...............................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................4, 5, 6, 17

*Atkinson v. Broe*,
  No. 15-CV-386-WMC, 2019 WL 231754
  (W.D. Wis. Jan. 16, 2019)...........................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .....................................................................................4

*Bell v. Wolfish*,
  441 U.S. 520 (1979) ...................................................................................10

*Biron v. Upton*,
  No. 4:15-CV-205-P, 2020 WL 85146
  (N.D. Tex. Jan. 7, 2020) ..............................................................................18

*Bistrian v. Levi*,
  912 F.2d 79 (3rd Cir. 2018)..........................................................................13

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
  403 U.S. 388 (1971) .........................................................................1, 2, 3, 5

*Brooks v. Warden*,
   800 F.3d 1295 (11th Cir. 2015)...................................................................22, 23

*Brunoehler v. Tarwater*,
   743 F. App'x 740 (9th Cir. 2018)......................................................................5

*Brunson v. Nichols*,
   No. 1:14-CV-2467, 2018 WL 7286410
   (W.D. La. Dec. 7, 2018)...................................................................................14

*Buenrostro v. Fajardo*,
   No. 114CV00075DADBAMPC, 2017 WL 6033469
   (E.D. Cal. Dec. 5, 2017)..................................................................................15

*Bush v. Lucas*,
   462 U.S. 367 (1983) ..........................................................................................6

*Caldwell v. Dep't of Corr. for City of New York*,
   No. 14-CV-5551JSARL, 2015 WL 428033
   (E.D.N.Y. Jan. 30, 2015)..................................................................................23

*Callahan v. Fed. Bureau of Prisons*,
   965 F.3d 520 (6th Cir. 2020) ...........................................................................14

*Carlson v. Green*,
   446 U.S. 14 (1980) .................................................................................. Passim

*Castro v. Cty. of Los Angeles*,
   833 F.3d 1060 (9th Cir. 2016).......................................................................3, 22

*Chappell v. Wallace*,
   462 U.S. 296 (1983) ..........................................................................................6

*Cholla Ready Mix, Inc. v. Civish*,
   382 F.3d 969 (9th Cir. 2004)..............................................................................5

*Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*,
   710 F.3d 946 (9th Cir. 2013)..............................................................................4

*City of Escondido, Cal. v. Emmons*,
139 S. Ct. 500 (2019) ........................................................................20, 21

*Collins v. Quinn*,
721 F. App'x 619 (9th Cir. 2018) .................................................................6

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*,
482 F.3d 1157 (9th Cir. 2007) ......................................................................4

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990) ........................................................................5

*Corr. Servs. Corp. v. Malesko*,
534 U.S. 61 (2001) ........................................................................................6

*Crespo v. Hurwitz*,
No. 17CV6329RRMPK, 2020 WL 7021658
(E.D.N.Y. Nov. 30, 2020) ...........................................................................15

*Cruz v. Hillman*,
01 CIV. 4169, 2002 WL 31045864
(S.D.N.Y. May 16, 2002) .............................................................................23

*Cunningham v. Milusnic*,
No. 519CV01244JFWAFM, 2020 WL 2735403 n.2
(C.D. Feb. 4, 2020) ........................................................................................7

*D.C. v. Wesby*,
138 S. Ct. 577 (2018) ...................................................................................21

*Davis v. Passman*,
442 U.S. 228 (1979) ......................................................................................6

*Doe v. United States*,
58 F.3d 494 (9th Cir.1995) ...........................................................................5

*Dudley v. United States*,
No. 4:19-CV-317-O, 2020 WL 532338
(N.D. Tex. Feb. 3, 2020) ..............................................................................12

*Erie R. Co. v. Tompkins*,
  304 U.S. 64 (1938) ...................................................................................7

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ...................................................................11, 12, 13

*Fazaga v. Fed. Bureau of Investigation*,
  916 F.3d 1202 (9th Cir. 2019) ...............................................................16

*FDIC v. Meyer*,
  510 U.S. 471 (1994) .................................................................................6

*Gonzalez v. Hasty*,
  269 F. Supp. 3d 45 (E.D.N.Y. 2017) ....................................................16

Gonzalez v. Planned Parenthood of Los Angeles,
  759 F.3d 1112 (9th Cir. 2014) .................................................................5

*Green v. City of N.Y. Dep't of Corr.*,
  No. 06 Civ. 4978, 2008 WL 2485402 (S.D.N.Y. June 19, 2008) .............23

*Hernandez v. Mesa*,
  140 S. Ct. 735 (2020) ......................................................................passim

*Hoffman v. Preston*,
  No. 1:16-CV-01617-LJOS-ABPC,
  2019 WL 1865459 (E.D. Cal. Apr. 25, 2019) .........................................14

*Hoffman v. Preston*,
  No. 1:16-CV-01617-LJOS-ABPC,
  2019 WL 5188927 (E.D. Cal. Oct. 15, 2019) .........................................17

*Hoffman v. Preston*,
  No. 1:16-CV-01617-LJOS-ABPC,
  2020 WL 58039 (E.D. Cal. Jan. 6, 2020) ...........................................12, 17

*Hudson v. Palmer*,
  468 U.S. 517 (1984) ...............................................................................22

*Hundley v. Parker*,
   69 F.3d 537 (6th Cir. 1995) ...................................................................24

*Hunter v. Bryant*,
   502 U.S. 224 (1991) ............................................................................20

*Isayeva v. Sacramento Sheriff's Dep't*,
   872 F.3d 938 (9th Cir. 2017) ...............................................................20

*Jones v. Bock*,
   549 U.S. 199 (2007) ............................................................................14

*Kisela v. Hughes*,
   138 S. Ct. 1148 (2018) ........................................................................21

*Klay v. Panetta*,
   758 F.3d 369 (D.C. Cir. 2014) ............................................................14

*Lanuza v. Love*,
   899 F.3d 1019 (9th Cir. 2018) ...............................................................9

*Luis Buenrostro v. Fajardo*,
   770 F. App'x 807 (9th Cir. 2019) ........................................................15

*Marquez v. United States*,
   2018 WL 1942418 (S.D. Cal. Apr. 25, 2018) .....................................11

*Marquez v. United States*,
   2019 WL 3532182 (S.D. Cal. Aug. 2, 2019) ......................................11

*Michelson v. Duncan*,
   No. 1:17-CV-50-FDW, 2018 WL 4474661
   (W.D.N.C. Sept. 18, 2018) ..................................................................13

*Milledge v. Fla. Dep't of Corr. Sec'y*,
   760 F. App'x 741 (11th Cir.) ...............................................................22

*Minneci v. Pollard*,
   565 U.S. 118 (2012) ..............................................................................6

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ....................................................................................19, 20

*Morales v. Fry*,
   873 F.3d 817 (9th Cir. 2017)........................................................................19, 20

*Morgan v. Shivers*,
   No. 1:14-CV-7921-GHW, 2018 WL 618451 (S.D.N.Y. Jan. 29, 2018) ..................15

*Mullenix v. Luna*,
   136 S. Ct. 305 (2015) ..........................................................................................20

*Nunez v. Duncan*,
   591 F.3d 1217 (9th Cir. 2010) ............................................................................16

*Oden v. True*,
   No. 3:18-CV-600-GCS, 2020 WL 4049922
   (S.D. Ill, July 20, 2020) ......................................................................................12

*Oliveras v. Basile*,
   No. 16 CIV. 9619 (KPF), 2020 WL 906131
   (S.D.N.Y. Feb. 25, 2020) ......................................................................................7

*Olivier v. Baca*,
   913 F.3d 852 (9th Cir. 2019)...............................................................................18

*Overton v. Bazzetta*,
   539 U.S. 126 (2003) ............................................................................................18

*Pearson v. Callahan*,
  555 U.S. 223 (2009)..............................................................................................20

*Pierce v. Cty. of Orange*,
   555 U.S. 126 (2009) ..............................................................................................3

*Powell v. Sheriff, Fulton Cty. Georgia*,
   511 F. App'x 957 (11th Cir. 2013)........................................................................24

*Saucier v. Katz*,
   533 U.S. 194 (2001) ............................................................................................20

*Scates v. Craddock*,
   No. 1:17CV22, 2019 WL 4200862
   (N.D. W. Va. Sept. 5, 2019) ................................................................14

*Schwarz v. Meinberg*,
   761 F. App'x 732 (9th Cir.) ...........................................................13, 17

*Schweiker v. Chilicky*,
   487 U.S. 412 (1988) .............................................................................6

*Shields-Nordness v. Galindo*,
   No. 18-CV-1426 (PJS/DTS), 2019 WL 1003114
   (D. Minn. Mar. 1, 2019) ......................................................................24

*Smith v. Shartle*,
   No. CV-18-00323-TUC-RCC, 2019 WL 5653444
   (D. Ariz. Oct. 31, 2019) ......................................................................12

*Smith v. Torres*,
   No. 1:16-CV-01924-LJO-JDP, 2019 WL 4139275
   (E.D. Cal. Aug. 30, 2019) ....................................................................22

*Stine v. Von Blanckensee*,
   No. CV 20-00489-TUC-DCB, 2020 WL 8024369
   (D. Ariz. Dec. 22, 2020) ........................................................12, 14, 16

Sutter v. United States,
   No. CV1707245SVWDFM,
   2019 WL 1841905 n.4 (C.D. Cal. Mar. 12, 2019) ...............................7, 9

*Tarhuni v. Holder*,
   8 F. Supp. 3d 1253 (D. Or. 2014) .......................................................19

*Texas v. Cobb*,
   532 U.S. 162 (2001) ...........................................................................12

*Toguchi v. Chung*,
   391 F.3d 1051 (9th Cir. 2004) ..............................................................6

*Tolbert v. Nash*,
No. 3:18-CV-128-DPJ-JCG, 2020 WL 5415739
(S.D. Miss. Apr. 29, 2020) .......................................................................13

*Turner v. Dellapia*,
No. 18-CV-1973-LTS-GWG, 2020 WL 6482880
(S.D.N.Y. Nov. 3, 2020)...........................................................................11

*United States v. L.A. Trucker Lines, Inc.*,
344 U.S. 33 (1952) ...................................................................................12

*United States v. Stanley*,
483 U.S. 669 (1987) ...................................................................................6

*Unknown Parties v. Nielsen*,
No. CV-15-00250-TUC-DCB, 2020 WL 813774
(D. Ariz. Feb. 19, 2020) .............................................................................3

*Vanderklok v. United States*,
868 F.3d 189 (3d Cir. 2017) .......................................................................7

*Vega v. United States*,
881 F.3d 1146 (9th Cir. 2018)..........................................................6, 10, 16

*Radio Servs. Co. v. U.S. Forest Serv.*,
578 F.3d 1116 (9th Cir. 2009)..................................................................16

*Wilkie v. Robbins*,
551 U.S. 537 (2007) ..............................................................................6, 18

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012)...................................................................5

*Wilson v. Layne*,
526 U.S. 603 (1999) .................................................................................19

*Woodford v. Ngo*,
548 U.S. 81 (2006) ...................................................................................18

*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017) ......................................................................passim

**Statutes**

18 U.S.C. § 3621(b) ...................................................................................15

18 U.S.C. § 3625 ........................................................................................15

18 U.S.C. § 3626 ........................................................................................16

28 U.S.C. §1915A(b) ...............................................................................1,11

28 U.S.C. §1915(e) .......................................................................................1

28 U.S.C. §1915(e)(2) ............................................................................1, 11

42 U.S.C. §1983 ......................................................................................1, 22

42 U.S.C. §1997e .......................................................................................14

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................4, 19, 20

Fed. R. Civ. P. 12(c)(6) ...............................................................................20

**Regulations**

28 C.F.R. § 542.13–.15 ...............................................................................16

28 C.F.R. § 542.15(a) ..................................................................................16

# I.   PROCEDURAL HISTORY

On February 23, 2018, Plaintiff Steve Marquez filed a pro-se Complaint against the United States, the U.S. Bureau of Prisons (BOP), Metropolitan Correctional Center San Diego (MCC) Warden David L. Young, and three unnamed prison officials in their individual and official capacities. (ECF No.1.) On April 25, 2018, the Court granted Plaintiff's motion to proceed in forma pauperis. (ECF No. 6.) The Court also dismissed, sua sponte pursuant to the Prison Litigation Reform Act (28 U.S.C. §§ 1915(e) and 1915A(b)), Plaintiff's claims:

- Pursuant to 42 U.S.C. § 1983;
- Pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), against the United States and the BOP; and
- Against MCC Warden Young.

(ECF No. 6 at 7-9.) The only claims the Court found met the "low threshold" for proceeding past the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b) were Plaintiff's claim against the United States pursuant to the Federal Tort Claims Act (FTCA) and his Eighth Amendment <u>Bivens</u> claim against three unnamed Doe defendants in their individual capacities. (<u>Id.</u> at 7-8.)

On August 2, 2019, the Court granted the United States' motion to dismiss with prejudice the FTCA claim against it, concluding the Court lacked subject-matter jurisdiction based on the FTCA's discretionary function exception. (ECF No. 38.) After the Court granted multiple requests for extensions of time to name the Doe defendants (ECF Nos. 42, 46, 48), on February 24, 2020, Plaintiff filed a First Amended Complaint (FAC, ECF No. 49). The FAC alleges Eighth Amendment "deliberate indifference" <u>Bivens</u> claims against Defendants in their official and individual capacities. Defendants now move to dismiss the claims against them since: 1) <u>Bivens</u> claims are unavailable against federal employees in their official capacities; 2) in the absence of congressional action, the Court should decline expanding the <u>Bivens</u> remedy to cover claims such as Plaintiff's, and 3) Defendants are entitled to qualified immunity.

1

## II.   FACTS ALLEGED IN FIRST AMENDED COMPLAINT

In his FAC, Plaintiff alleges the following facts:[1]

On or about August 13, 2016, Plaintiff was booked into the MCC after being charged with a sex offense. (FAC ¶ 7.) During his classification interview, Plaintiff told Defendant Rodriguez that he wanted to be placed in protective custody to be protected from other inmates because of the crime for which he was arrested. (Id. ¶¶ 8-10.) Instead, Rodriguez placed Plaintiff into the MCC's general population. (Id. ¶¶ 11-13.) During the classification interview, Rodriguez gave Plaintiff an emergency contact form and told Plaintiff "here, this is for when something happens to you in prison." (Id. ¶ 11.) Rodriguez also told Plaintiff, in response to his concerns about being attacked by other inmates, to "tell the other inmates you['re] here for selling drugs." (Id. ¶ 12.)

Soon after being housed, Plaintiff was threatened by several inmates, moved to a back corner of the dormitory, and forced to perform countless repetitions of squats causing him to become dizzy, exhausted, and repeatedly collapse until he was in and out of consciousness. (Id. ¶¶ 15-18.) The next day, Plaintiff experienced pain, fever, cold sweats, swelling of his face and body, vomiting, loss of appetite, urination of blood, shortness of breath, complete loss of leg function, dizziness, headache, and mental and emotional anguish. (Id. ¶ 19.) When he notified a prison official, he was told to make an appointment with medical staff. (Id. ¶ 20.) Plaintiff subsequently notified a nurse, who scheduled him to see medical staff later that day. (Id.) The medical staff evaluated him, including drawing blood for lab testing. (Id.)

The next day, Plaintiff was called back by the medical staff for additional bloodwork and to be provided intravenous fluids. (Id. ¶ 21.) Similar treatment was provided the next day. (Id. ¶ 23.) The day after that, Plaintiff was transferred to Alvarado Hospital, where he was provided inpatient care for the next week. (Id. ¶¶ 25-26.) At Alvarado Hospital, Plaintiff

---

[1]   For purposes of this motion to dismiss, Defendants do not contest these alleged facts, (as opposed to the United States' motion to dismiss for lack of subject matter jurisdiction, which included an Intake Screening Form indicating Plaintiff marked that there was no reason he could not be placed in general population. (ECF No. 28-3)).

1   was diagnosed with acute renal failure with acute tubular necrosis and severe dehydration,

2   acute rhabdomyolysis, and other acute and chronic complications.[2] (Id. ¶¶ 27-29.)

3        After discharge from the hospital, Plaintiff returned to the MCC and was interviewed

4   by Defendant Kelly. (Id. ¶ 30.) Plaintiff explained what had previously occurred and again

5   requested to be placed into protective custody. (Id.) Defendant Kelly chose instead to house

6   Plaintiff in the same dormitory he had previously been housed. (Id.) Plaintiff stayed at the

7   MCC for approximately one month until the federal charges were dropped. (Id. ¶ 33.) He

8   was subsequently housed at California State Prison, Corcoran, and later at Mule Creek State

9   Prison. (Id.; ECF No. 57.) The time spent outside of protective custody at the MCC after

10  his return from the hospital caused Plaintiff mental anguish/emotional distress, in addition

11  to the symptoms he continued to suffer from. (FAC ¶¶ 32, 38-39.)

12       Plaintiff alleges Hernandez's and Kelly's failure to house him in protective custody

13  constituted deliberately indifferent conduct in violation of his Eighth Amendment rights

14  under the United States Constitution.[3] (Id. ¶¶ 36-39.)

15

16

17  _____

[2]     The FAC indicates medical records are attached as Exhibit A, but no such exhibit

18  was attached. Plaintiff did attach 17 pages of medical records as Exhibit A to his original
    Complaint. (ECF No. 1 at 24-40.) Those records indicate that Plaintiff's discharge

19  diagnoses from Alvarado Hospital were, "Acute renal failure with acute tubular necrosis
    and severe dehydration and acute rhabdomyolysis and with increased CPK and overexertion

20  and benign prostatic hypertrophy and fatty liver." (ECF No. 1 at 24.)

21  [3]     Plaintiff's allegations indicate he was a federal pretrial detainee rather than a
    convicted inmate. As such the standard of "deliberate indifference," under the Fifth

22  Amendment (if Plaintiff could bring such claims, which as described below he cannot) is

23  slightly different than similar claims inmates bring under the Eighth Amendment. Cf. Castro
    v. Cty. of Los Angeles, 833 F.3d 1060, 1067-71 (9th Cir. 2016) (en banc) (inmate must

24  prove defendant aware of facts from which the inference could be drawn that a substantial
    risk of serious harm exists, and he must also draw the inference, whereas pretrial detainee

25  need prove something akin to reckless disregard); Pierce v. Cty. of Orange, 526 F.3d 1190,

26  1206 (9th Cir. 2008) (Fifth Amendment substantive due process protection for federal
    detainees similar to Fourteenth Amendment protection for state detainees); Unknown

27  Parties v. Nielsen, No. CV-15-00250-TUC-DCB, 2020 WL 813774, at *3 (D. Ariz. Feb.
    19, 2020) (same). This difference does not affect the arguments made in this motion to

28  dismiss.

3

# III.  ARGUMENT

**A.   Plaintiff's Claims Against Defendants in Their Official Capacities Must Be Dismissed for Lack of Subject Matter Jurisdiction**

"[A] <u>Bivens</u> action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." <u>Consejo de Desarrollo Economico de Mexicali, A.C. v. United States</u>, 482 F.3d 1157, 1173 (9th Cir. 2007). "This is because a <u>Bivens</u> suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." <u>Id.</u> Therefore, a district court lacks subject matter jurisdiction over such claims because the United States has not consented to its officials being sued in their official capacities. <u>See</u> <u>id.</u> Accordingly, the Court must dismiss Plaintiff's claims against Defendants in their official capacities.

**B.   Plaintiff's Claims Against Defendants in Their Individual Capacities Must Be Dismissed for Failure to State A Claim Upon Which Relief Can Be Granted**

### 1.   Legal Standards for Motion to Dismiss for Failure to State A Claim Upon Which Relief Can Be Granted

A motion to dismiss for failure to state a claim upon which relief can be granted may be brought by a defendant pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." <u>Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.</u>, 710 F.3d 946, 956 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully, rather, factual allegations must be enough to raise a right to relief above the speculative level. <u>See</u> <u>id.</u> at 678–79, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) ("'[E]ntitle[ment] to relief' requires more than labels and conclusions,

4

and a formulaic recitation of the elements of a cause of action will not do."). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678.

Although allegations of fact are normally taken as true and construed in the light most favorable to the nonmoving party, a court need not accept as true allegations that are merely conclusory, unwarranted deductions of fact, unreasonable inferences, allegations that are contradicted by matters properly subject to judicial notice or by exhibit referred to or incorporated by reference into the complaint, or that are legal conclusions that cannot reasonably be drawn from the facts alleged. See Iqbal, 556 U.S. at 678-79; Gonzalez v. Planned Parenthood of Los Angeles, 759 F.3d 1112, 1115 (9th Cir. 2014); Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n.4 (9th Cir. 2012); Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004). Although leave to amend should be given freely, Doe v. United States, 58 F.3d 494, 497 (9th Cir.1995), a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile. See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990) (per curiam).

> **2.    The Court Should Dismiss Plaintiff's Bivens Claims Against Defendants in Their Individual Capacities Since, In the Absence of Congressional Action, The Court Should Decline Expanding the Bivens Remedy to Cover Claims Such as Plaintiff's**

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court implied a damages remedy under the Fourth Amendment, despite the absence of statutory authorization for such suit, against federal officers who entered the plaintiff's apartment, manacled him in front of his wife and children, threatened to arrest his family, searched his apartment, and interrogated, booked, and subjected him to a strip search, without a warrant or probable cause. Implied, extra-statutory constitutional claims against federal officers have subsequently been referred to as "Bivens claims." See Brunoehler v. Tarwater, 743 F. App'x 740, 747–48 (9th Cir. 2018).

A <u>Bivens</u> claim requires that "a plaintiff . . . plead that [a] Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009).

"Since <u>Bivens</u>, the [Supreme] Court has only expanded this 'implied cause of action' twice." <u>Vega v. United States</u>, 881 F.3d 1146, 1152 (9th Cir. 2018). In <u>Davis v. Passman</u>, 442 U.S. 228, 248-49 (1979), the Supreme Court recognized a <u>Bivens</u> claim for violating the Equal Protection Clause of the Fifth Amendment when a Congressman fired an administrative assistant based on her gender. And in <u>Carlson v. Green</u>, 446 U.S. 14, 16-20 (1980), the Supreme Court recognized a <u>Bivens</u> claim for a violation of the Eighth Amendment's proscription against infliction of cruel and unusual punishment when prison officials showed deliberate indifference[4] to a prisoner's serious medical needs by failing to transfer him during an asthmatic attack, against the advice of doctors, resulting in the prisoner's death.

Since 1980, the Supreme Court has rejected all attempts to expand the <u>Bivens</u> remedy to other types of cases.[5] The Supreme Court's consistent refusal is purposeful: it regards <u>Bivens</u> as the product of an "ancien regime," when "the Court followed a different approach to recognizing implied causes of action than it follows now." <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1855 (2017). "[E]xpanding the <u>Bivens</u> remedy is now considered a disfavored judicial activity," because Congress, not the courts, should typically decide whether and how to provide a damages remedy. <u>See id.</u> at 1857. In other words, since federal courts lack

---

[4]     "[A] prison official is deliberately indifferent only if he or she knows of and disregards an excessive risk to inmate health; neither a difference of opinion concerning the course of treatment nor mere negligence in diagnosing or treating a medical condition amounts to deliberate indifference." <u>Collins v. Quinn</u>, 721 F. App'x 619, 620 (9th Cir. 2018) (citing <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057-60 (9th Cir. 2004).

[5]     <u>See, e.g.</u>, <u>Minneci v. Pollard</u>, 565 U.S. 118 (2012) (Eighth Amendment suit against prison guards at private prison); <u>Wilkie v. Robbins</u>, 551 U.S. 537 (2007); <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61 (2001) (Eighth Amendment suit against private prison operator); <u>FDIC v. Meyer</u>, 510 U.S. 471 (1994) (Fifth Amendment due process suit for wrongful termination from federal employment); <u>Schweiker v. Chilicky</u>, 487 U.S. 412 (1988); <u>United States v. Stanley</u>, 483 U.S. 669 (1987); <u>Bush v. Lucas</u>, 462 U.S. 367 (1983); <u>Chappell v. Wallace</u>, 462 U.S. 296 (1983).

6

common law powers (at least since <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938)), they may only recognize a damages remedy that "rest[s] at bottom on a statute enacted by Congress." <u>Hernandez v. Mesa</u>, 140 S. Ct. 735, 742 (2020). "The reason is that the separation of powers generally vests the power to create new causes of action in Congress, not [the courts]." <u>Ahmed v. Weyker</u>, No. 18-3461, 2020 WL 7637930, at *3 (8th Cir. Dec. 23, 2020).

To determine whether a purported <u>Bivens</u> claim may proceed, a two-part test is used. First, a court must determine whether the claim is the same as one of the three <u>Bivens</u> claims the Supreme Court has previously approved, or whether it presents a "new context" or involves a "new category of defendants." <u>See Abbasi</u>, 137 S. Ct. at 1859-1860; <u>Hernandez</u>, 140 S. Ct. at 743. Unless a purported <u>Bivens</u> claim fails to differ in any "meaningful way" from the facts involved in <u>Bivens</u>, <u>Davis</u>, or <u>Carlson</u>, then it seeks to extend <u>Bivens</u> to a new context.[6] <u>See Abbasi</u>, 137 S. Ct. at 1859; <u>Hernandez</u>, 140 S. Ct. at 741-43. A non-exhaustive list of ways in which a claim may differ from the claims in <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>, such that it is a "new context," include:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; [or] the risk of disruptive intrusion by the Judiciary into the functioning of other branches.

<u>Abbasi</u>, 137 S. Ct. at 1860. Indeed, even if a claim "has significant parallels to one of the [Supreme] Court's previous [three] <u>Bivens</u> cases," and even if the suit only seeks a "modest

---

[6]  Therefore, even if a controlling circuit court decision previously recognized an extension of the <u>Bivens</u> remedy, <u>Abbasi</u> abrogates any such precedent that go beyond the trinity of cases the Supreme Court recognizes as controlling the "new context" test. A district court cannot rely on such precedent; it must apply the two-step "new context" and "special factors" test to determine whether a <u>Bivens</u> claim should be dismissed. <u>See Vanderklok v. United States</u>, 868 F.3d 189, 199 (3d Cir. 2017); <u>Oliveras v. Basile</u>, No. 16 CIV. 9619 (KPF), 2020 WL 906131, at *3 (S.D.N.Y. Feb. 25, 2020); <u>Cunningham v. Milusnic</u>, No. 519CV01244JFWAFM, 2020 WL 2735403, at *5 n.2 (C.D. Cal. Feb. 4, 2020), report and recommendation adopted, No. 519CV01244JFWAFM, 2020 WL 3103787 (C.D. Cal. June 11, 2020); <u>Sutter v. United States</u>, No. CV1707245SVWDFM, 2019 WL 1841905, at *6 n.4 (C.D. Cal. Mar. 12, 2019).

extension" of one of those cases based on "small" differences between the new claim and Bivens, Davis, or Carlson, unless such differences are "trivial," they are "meaningful" enough "to create a new Bivens context." Id. at 1864-65. Therefore, a claim may arise in a new context even if it is based on the same constitutional provision as a claim in which a damages remedy was previously recognized and can be generally described as similar to such claim. See Hernandez, 140 S. Ct. at 743-44, 756 (finding a new context despite the fact that it, like Bivens, involved a claim alleging unnecessary force against a person who poses no immediate threat to a law-enforcement officer or others in violation of the Fourth Amendment since an arrest and search in New York City is different than a cross-border shooting); see also id. at 743 ("[O]ur understanding of a 'new context' is broad."); Ahmed, 2020 WL 7637930, at *3, *5 (context new if facts and legal issues do not "exactly mirror[]" Bivens, Davis, or Carlson; "If the test sounds strict, it is.").

If the context is new, a court moves to the second step to determine whether "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Abbasi, 137 S. Ct. at 1843. "Special factors counselling hesitation" exist if "a court [must] hesitate before answering" "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-58. In other words:

> [I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

Id. at 1858. Although there are many different factors that may counsel hesitation about extending Bivens to various claims, "they can all be condensed to one concern—respect for the separation of powers." Hernandez, 140 S. Ct. at 749.

"[A]n alternative remedial structure . . . [may] alone . . . limit the power of the Judiciary to infer a new Bivens cause of action." Abbasi, 137 S. Ct. at 1858. For instance, "[c]ourts have found that the BOP's administrative grievance process, a federal tort claims action, and the availability of injunctive relief" are alternative remedies that prohibit

8

extending <u>Bivens</u> to a new context. <u>Sutter v. United States</u>, No. CV1707245SVWDFM, 2019 WL 1841905, at *6 (C.D. Cal. Mar. 12, 2019) (citing cases). Congress's decision not to provide a judicial remedy, however, does not compel a court to step into its shoes by providing a <u>Bivens</u> remedy. <u>See</u> <u>Hernandez</u>, 140 S. Ct. at 750. "The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." <u>Id.</u>; <u>see also</u> <u>id.</u> ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [plaintiff] an 'adequate' federal remedy for his injuries."). It is just that "[w]hen alternative methods of relief are available, a <u>Bivens</u> remedy is usually not." <u>Id.</u> at 750 n.12 (quoting <u>Abbasi</u>, 137 S. Ct. at 1863).

In summary, if a purported <u>Bivens</u> claim is not precluded by prior controlling precedent, a two-part inquiry is used to determine whether the claim may proceed: 1) the court determines whether the claim involves a "new context" or a "new category of defendants" than <u>Bivens</u>, <u>Davis</u>, or <u>Carlson</u>; and, if so, 2) whether there are any special factors that counsel hesitation about extending a <u>Bivens</u> remedy to such a new context. <u>See</u> <u>id.</u> at 743; <u>Lanuza v. Love</u>, 899 F.3d 1019, 1023-25 (9th Cir. 2018). When so evaluating, "the most important question 'is 'who should decide' whether to provide for a damages remedy, Congress or the courts?' The correct 'answer most often will be Congress.'" <u>Hernandez</u>, 140 S. Ct. at 750 (internal citations omitted).

### a.   Plaintiff's Claims Against Defendants Present a New <u>Bivens</u> Context

Plaintiff's claims against Defendants seek to expand <u>Bivens</u> beyond the context of what the Supreme Court has previously approved. While there is some similarity between Plaintiff's claim and <u>Carlson</u> in that they both involve decision-making in the prison context,[7] the two claims are significantly different, and at the very least sufficiently so to create a new <u>Bivens</u> context.

---

[7]   The claims obviously have significant differences from the claims involved in <u>Bivens</u> or <u>Davis</u>, which are described above.

Plaintiff alleges he was injured after Defendants placed him among the general population of the MCC, rather than honoring his request to be placed in protective custody because he had been charged with a sex offense. He claims Defendant Rodriguez's alleged deliberate indifference led to him being assaulted, while Defendant Kelly's led to him suffering emotional distress by being housed in the same unit as before he was assaulted.

Neither of these claims is like the context that was present in <u>Carlson</u>. The allegations against prison officials in <u>Carlson</u> were that prison officials:

> [B]eing fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of [the plaintiff's] chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital. The complaint further alleges that Jones' death resulted from these acts and omissions, that petitioners were deliberately indifferent to Jones' serious medical needs, and that their indifference was in part attributable to racial prejudice.

446 U.S. at 17 & n.1. Based on the facts in <u>Carlson</u>, the Supreme Court concluded a <u>Bivens</u> claim may go forward against the prison officials alleged to have been "deliberately indifferent" to the prisoner's obvious medical needs by deliberately disregarded the advice of physicians to transfer the prisoner to an appropriate facility to receive such care. In other words, <u>Carlson</u> "expanded <u>Bivens</u> . . . for failure to provide adequate medical treatment to a prisoner." <u>Vega</u>, 881 F.3d at 1152; <u>see also</u> <u>Hernandez</u>, 140 S. Ct. at 741 (<u>Carlson</u> "extended <u>Bivens</u> to . . . a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment.").

Plaintiff does not allege he was provided inadequate medical treatment. Rather, he challenges the appropriateness of his housing within the MCC. How to appropriately house prisoners is one of the most basic decisions made at prisons.[8] The difference between such

---

[8]   "[P]roblems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979).

housing decisions and the provision of medical care to prisoners is not "trivial." Rather, it would require a large extension of <u>Carlson</u> to allow a <u>Bivens</u> remedy regarding such housing decisions, while, as explained above, even a modest extension is sufficient to create a new context. Furthermore, Plaintiff's claims differ from <u>Carlson</u> with regard to the extent of judicial guidance as to how an officer should respond to the problem of how to house an inmate accused of a sex offense (versus what constitutes inadequate medical treatment), and the risk of disruptive intrusion by the Judiciary into the functioning of the BOP by allowing litigation over such housing decisions. Therefore, Plaintiff's claims present new <u>Bivens</u> contexts under step one of the <u>Abbasi</u>/<u>Hernandez</u> test.

Plaintiff may argue that his claims are not a new context because they are like <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).[9] In <u>Abbasi</u> and <u>Hernandez</u>, however, the Supreme Court specified that <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u> are the *only* cases a court may compare a purported <u>Bivens</u> claim to in order to determine if it is a new context. See <u>Abbasi</u>, 137 S. Ct. at 1860 (concluding plaintiffs' claims raised a new context because "claims bear little resemblance to the three <u>Bivens</u> claims the Court has approved in the past: a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma."); <u>Hernandez</u>, 140 S. Ct. at 741-43. Neither <u>Abbasi</u> nor <u>Hernandez</u> indicate that <u>Farmer</u> is a fourth case that a district court may use to determine whether a claim raises a new <u>Bivens</u> context. Cf. <u>Turner v. Dellapia</u>, No. 18-CV-1973-LTS-GWG, 2020 WL 6482880, at *6 (S.D.N.Y. Nov. 3, 2020) ("There are only three 'previous <u>Bivens</u> cases' of relevance to [the new context] inquiry.").

It is not as if the Supreme Court simply forgot <u>Farmer</u>. Rather, that case was twice

---

[9]   This Court, while conducting the "low threshold" analysis required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b), cited <u>Farmer</u> in determining that low threshold was met as to his deliberate indifference claims. See <u>Marquez v. United States</u>, 2018 WL 1942418, at *4 (S.D. Cal. Apr. 25, 2018) (ECF No. 6). Of course, the Court also determined Plaintiff's FTCA claim met the "low threshold" before subsequently dismissing that claim after briefing by the United States. See <u>Marquez v. United States</u>, 2019 WL 3532182, at *5 (S.D. Cal. Aug. 2, 2019) (ECF No. 38).

cited by the dissent in <u>Abbasi</u>. <u>See</u> 137 S. Ct. at 1877-78. The <u>Abbasi</u> majority, however, believed <u>Farmer</u> cannot be used to determine whether a <u>Bivens</u> context is new because the Supreme Court was not asked in that case to determine whether it should recognize an implied <u>Bivens</u> remedy, and therefore did not do so. Rather, the <u>Farmer</u> decision concerned the definition of the term "deliberate indifference." <u>See</u> 511 U.S. at 829, <u>see also</u> <u>id.</u> at 832 (resolving circuit split on definition of deliberate indifference involving, inter alia, § 1983 actions). In doing so, the <u>Farmer</u> Court assumed, but did not decide, a <u>Bivens</u> remedy existed. <u>See</u> <u>Stine v. Von Blanckensee</u>, No. CV 20-00489-TUC-DCB, 2020 WL 8024369, at *4 (D. Ariz. Dec. 22, 2020) (Supreme Court has never specifically concluded that failure to protect inmate <u>Bivens</u> cause of action exists outside of medical treatment context). "Constitutional rights are not defined by inferences from opinions which did not address the question at issue." <u>Texas v. Cobb</u>, 532 U.S. 162, 169 (2001); <u>see also</u> <u>United States v. L.A. Trucker Lines, Inc.</u>, 344 U.S. 33, 38 (1952) (explaining that an issue not "raised in briefs or argument nor discussed in the opinion of the Court" cannot be "binding precedent on th[e] point").

That is why the Supreme Court specifically stated in <u>Abbasi</u> that "<u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." <u>Abbasi</u>, 137 S. Ct. at 1855. Therefore, those three cases, which do not include <u>Farmer</u>, are the only cases that may be used to determine if a context is new. <u>See</u> <u>Oden v. True</u>, No. 3:18-CV-600-GCS, 2020 WL 4049922, at *4-*5 (S.D. Ill. July 20, 2020) (dismissing conditions of confinement claim after determining <u>Farmer</u> not relevant to new context inquiry since it was focused on deliberate indifference standard, and did not analyze question of whether to extend <u>Bivens</u> claim to conditions of conferment context); <u>Dudley v. United States</u>, No. 4:19-CV-317-O, 2020 WL 532338, at *6 (N.D. Tex. Feb. 3, 2020) (concluding <u>Farmer</u> not relevant to new context analysis and that prisoner claim of failure to protect from harm outside of provision of medical care is new context); <u>Hoffman v. Preston</u>, No. 116CV01617LJOSABPC, 2020 WL 58039, at *2 (E.D. Cal. Jan. 6, 2020) (same); <u>Smith v. Shartle</u>, No. CV-18-00323-TUC-RCC, 2019 WL

5653444, at *3-*5 (D. Ariz. Oct. 31, 2019) (dismissing failure to protect claim despite fact would have been cognizable under <u>Farmer</u> pre-<u>Abassi</u>, because context differs from <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>); <u>see also</u> <u>Schwarz v. Meinberg</u>, 761 F. App'x 732, 733 (9th Cir.), cert. denied, 140 S. Ct. 468, 205 L. Ed. 2d 278 (2019) (claim regarding unsanitary cell conditions new context because not same as three previously recognized claims); <u>Tolbert v. Nash</u>, No. 3:18-CV-128-DPJ-JCG, 2020 WL 5415739, at *4 (S.D. Miss. Apr. 29, 2020), report and recommendation adopted, No. 3:18-CV-128-DPJ-JCG, 2020 WL 2509110 (S.D. Miss. May 15, 2020) (claim of unconstitutional confinement in SHU new context); <u>Ajaj v. United States</u>, No. 15-CV-02849-RM-KLM, 2020 WL 747013, at *13 (D. Colo. Feb. 13, 2020) (noting <u>Farmer</u> was not included in the list of recognized <u>Bivens</u> contexts discussed in <u>Abbasi</u>); <u>Michelson v. Duncan</u>, No. 1:17-CV-50-FDW, 2018 WL 4474661, at *4 (W.D.N.C. Sept. 18, 2018) (state prisoner's claim that federal officer failed to protect from physical attack new context); <u>but see</u> <u>Bistrian v. Levi</u>, 912 F.3d 79, 90-92 (3rd Cir. 2018) (concluding, pre-<u>Hernandez</u>, that "<u>Farmer</u> continues to be the case that most directly deals with whether a <u>Bivens</u> remedy is available for a failure-to-protect claim resulting in physical injury.").[10] Since Plaintiff's claims are not similar to the contexts of <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>, they present new contexts and the Court must move on to step two of the <u>Abbasi</u>/<u>Hernandez</u> test.

> **b.   Special Factors Counselling Hesitation Preclude Extending a <u>Bivens</u> Remedy to Plaintiff's Claims**

The Court should not extend a <u>Bivens</u> remedy to the new context created by Plaintiff's claims against Defendants. One special factor counseling hesitation against extending a <u>Bivens</u> remedy to Plaintiff's claims is that Congress has legislated extensively on prison issues but has not authorized the type of <u>Bivens</u> suits Plaintiff seeks. When "Congress has legislated pervasively on a particular topic but has not authorized the sort of

---

[10]   Regardless, Farmer's claim that it was deliberately indifferent to imprison her, a transsexual female, in a male prison, is a different context than Plaintiff's claims. Therefore, even if <u>Farmer</u> was a fourth case that could be used to determine whether Plaintiff's claims present a "new context," under step one of the <u>Abbasi</u>/<u>Hernandez</u> test, the answer would still be yes since it would require at least a "modest extension" of <u>Farmer</u>.

suit that a plaintiff seeks to bring under <u>Bivens</u>, respect for the separation of powers demands that courts hesitate to imply a remedy." <u>Klay v. Panetta</u>, 758 F.3d 369, 376 (D.C. Cir. 2014). Congress's failure to authorize a damages action against prison officials in their individual capacities for their housing decisions, in light of the extensive legislation on prison issues, provides sufficient reason to pause before extending <u>Bivens</u> to the context involved in Plaintiff's claims. Therefore, the Court should reject the request to so extend. <u>See</u> <u>Hernandez</u>, 140 S. Ct. at 743.

Indeed, in <u>Abbasi</u>, the Supreme Court noted the fact Congress passed the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e ("PLRA"), without a standalone provision allowing suits against federal employees indicated it did not intend to extend the <u>Carlson</u> remedy. <u>See</u> 137 S. Ct. at 1865. Subsequently, numerous courts have cited the PLRA as a basis for denying requests to extend a <u>Bivens</u> remedy against federal prison officials beyond those without material differences from <u>Carlson</u>.[11]  <u>See, e.g.</u> <u>Callahan v. Fed. Bureau of Prisons</u>, 965 F.3d 520, 524 (6th Cir. 2020) ("[L]egislative action suggesting that Congress does not want a damages remedy counsels against judicial do-it-yourself projects. Congress paid close attention to inmate constitutional claims when it enacted the [PLRA]. The Act 'does not provide for a standalone damages remedy against federal jailers." (internal citations and quotation marks omitted)); <u>Stine</u>, 2020 WL 8024369, at *4 ("Congress passed the Prison Litigation Reform Act ("PLRA"), which "suggests that Congress does not want a damages remedy, which is itself a factor counseling hesitation.")"; <u>Hoffman v. Preston</u>, No. 1:16-CV-01617-LJOS-ABPC, 2019 WL 1865459, at *6 (E.D. Cal. Apr. 25, 2019) ("The Court finds that the PLRA demonstrates legislative action within the context of prisoner complaint litigation, and suggests Congressional intent to limit potential

---

[11]    After all, Congress enacted the PLRA so there would be fewer prisoner lawsuits and remove federal district courts from the daily operation of prisons. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 203 (2007); <u>Scates v. Craddock</u>, No. 1:17CV22, 2019 WL 6462846, at *7 (N.D. W. Va. July 26, 2019), report and recommendation adopted, No. 1:17-CV-22, 2019 WL 4200862 (N.D. W. Va. Sept. 5, 2019); <u>Brunson v. Nichols</u>, No. 1:14-CV-2467, 2018 WL 7286410, at *4 (W.D. La. Dec. 7, 2018), report and recommendation adopted, No. 14-CV-2467, 2019 WL 545479 (W.D. La. Feb. 11, 2019).

damages remedies in this area and therefore this special factor counsels hesitation in extending <u>Bivens</u>.”); <u>Crespo v. Hurwitz</u>, No. 17CV6329RRMPK, 2020 WL 7021658, at *6 (E.D.N.Y. Nov. 30, 2020) (“[T]he threshold for concluding that a factor counsels hesitation ‘is remarkably low . . . [C]ourts [must] consider . . . whether Congress structured its regulatory authority in such a manner that it makes it less likely that Congress would want the Judiciary to interfere. The PLRA suggests such a motivation, and that suggestion is enough to counsel hesitation.” (internal citations and quotation marks omitted)); <u>Morgan v. Shivers</u>, No. 1:14-CV-7921-GHW, 2018 WL 618451, at *6 (S.D.N.Y. Jan. 29, 2018) (“Congress has legislated in the arena of prisoner rights, suggesting that the courts should not extend a damages remedy in this sphere.”); <u>Buenrostro v. Fajardo</u>, No. 114CV00075DADBAMPC, 2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017), subsequently aff’d sub nom. <u>Luis Buenrostro v. Fajardo</u>, 770 F. App’x 807 (9th Cir. 2019), reh’g denied (June 18, 2019) (“Congress has been active in the area of prisoners’ rights, and its actions do not support the creation of a new <u>Bivens</u> claim.”).

Furthermore, even beyond the PLRA, other statutes demonstrate Congress’s desire to largely defer matters of prison administration to the BOP without allowing prisoner lawsuits. This is true regarding matters concerning prisoners’ place of imprisonment, security designation, programmatic needs, mental and medical health needs, faith-based needs, and other security concerns. <u>See</u> 18 U.S.C.A. § 3621(b). Congress has also stripped courts of jurisdiction to review security classifications for prison housing under the APA. <u>See</u> 18 U.S.C. § 3625. Given this pervasive legislation, Congress’s failure to authorize claims such as those Plaintiff alleges indicates this Court should hesitate to imply the remedy Plaintiff seeks out of respect for separation of powers.

A second special factor weighing against extending the <u>Bivens</u> remedy to claims such as Plaintiff’s is the presence of an alternative remedial structure. “[A]n alternative remedial structure limits [courts’] authority to infer a new <u>Bivens</u> cause of action.” <u>Buenrostro</u>, 770 F. App’x at 808 (9th Cir. 2019); <u>see also</u> <u>Adams v. Johnson</u>, 355 F.3d 1179, 1184 (9th Cir. 2004) (“[W]here Congress has provided some mechanism for relief, <u>Bivens</u> claims are

15

precluded."). "The existence of . . . an alternative remedy raises the inference that Congress 'expected the Judiciary to stay its <u>Bivens</u> hand' and 'refrain from providing a new and freestanding remedy in damages.'" <u>Fazaga v. Fed. Bureau of Investigation</u>, 916 F.3d 1202, 1242 (9th Cir. 2019). Courts must "refrain[ ] from creating a judicially implied remedy even when the available statutory remedies 'do not provide complete relief' for a plaintiff that has suffered a constitutional violation.'" <u>Id.</u> "As long as 'an avenue for some redress' exists, 'bedrock principles of separation of powers forclose[s] judicial imposition of a new substantive liability.'" <u>Id.</u> at 1243. It does not matter if the alternative provision "does not provide for monetary damages . . . [] [n]or . . . allow claims against individuals or provide a right to a trial by jury . . . provided that the absence of such . . . protections was not inadvertent on the part of Congress." <u>W. Radio Servs. Co. v. U.S. Forest Serv.</u>, 578 F.3d 1116, 1123 (9th Cir. 2009).

Alternative remedial structures available to Plaintiff to challenge the conditions of his confinement include BOP's Administrative Remedy Program grievance process. As the Ninth Circuit has explained:

> The BOP grievance process is set forth at 28 C.F.R. § 542.13–.15. As a first step in this process, an inmate normally must present his complaint informally to prison staff using a BP–8 form. If the informal complaint does not resolve the dispute, the inmate may make an 'Administrative Remedy Request' concerning the dispute to the prison Warden using a BP–9 form. . . . If the Warden renders an adverse decision on the BP–9, the inmate may appeal to the Regional Director using a BP–10 form. 28 C.F.R. § 542.15(a). . . . The inmate may appeal an adverse decision by the Regional Director to the Central Office (also called the General Counsel) of the BOP using a BP–11 form.

<u>Nunez v. Duncan</u>, 591 F.3d 1217, 1219–20 (9th Cir. 2010). This administrative complaint process is an alternative remedial structure counseling against extending a <u>Bivens</u> remedy to prisoners' suits based on the conditions of their confinement, even if it is used but ultimately unsuccessful. <u>See</u> <u>Vega</u>, 881 F.3d at 1154; <u>Stine</u>, 2020 WL 8024369, at *5; <u>Gonzalez v. Hasty</u>, 269 F. Supp. 3d 45, 60 (E.D.N.Y. 2017), aff'd, 755 F. App'x 67 (2d Cir. 2018). Furthermore, another remedial structure available to a federal prisoner who believes his constitutional rights are being violated by the conditions of his confinement, including his assigned housing, is a suit for declaratory and injunctive relief pursuant to 18 U.S.C. §

3626.[12] See Hoffman v. Preston, No. 116CV01617LJOSABPC, 2019 WL 5188927, at *5 (E.D. Cal. Oct. 15, 2019), report and recommendation adopted, No. 116CV01617LJOSABPC, 2020 WL 58039 (E.D. Cal. Jan. 6, 2020); see also Abbasi, 137 S. Ct. at 1865 (alternative remedies may include "an injunction requiring the warden to bring his prison into compliance . . . or some other form of equitable relief").

A third special factor counseling hesitation to extend a Bivens remedy to Plaintiff's claim is that so extending would greatly burden both BOP and its individual employees in performing the important task of running a prison. "[T]he decision to recognize a damages remedy requires an assessment of the impact of government operations systemwide," including "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." Abbasi, 137 S. Ct. at 1858. This is because:

> Claims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government. In addition, the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered.

Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 685 (2009) ("[I]t is counterproductive to require the substantial diversion that is attendant to participating in litigation . . . [] . . . in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government."); Schwarz, 761 F. App'x at 735 (affirming denial of Bivens remedy against prison officials because doing so "would substantially affect government operations and unduly burden BOP officials who must defend against this suit in their personal capacities."). This is especially so in the prison context, where courts "must accord substantial deference to the professional judgment of

---

[12] There is also an open question of whether a prisoner might be able to challenge his confinement conditions via a petition for a writ of habeas corpus. See Abbasi, 137 S. Ct. at 1862–63.

prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

"When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." Abbasi, 137 S. Ct. at 1857. Authorizing private damages actions against the personal assets of prison officials based on their housing decisions implicates cost considerations that Congress, not the courts, should weigh and balance. Furthermore, whether allowing such suits would lead to a number of similar suits, thereby undermining Congress's goal in passing the PLRA to "bring . . . under control" the "sharp rise in prisoner litigation," see Woodford v. Ngo, 548 U.S. 81, 84 (2006), would be better left to the legislature.

A fourth special factor weighing against expanding a Bivens remedy to Plaintiff's claims is the "serious difficulty of devising a workable cause of action." See Wilkie v. Robbins, 551 U.S. 537, 562 (2007); see also Atkinson v. Broe, No. 15-CV-386-WMC, 2019 WL 231754, at *6 (W.D. Wis. Jan. 16, 2019) ("[C]laims that are easy to state but hard to prove weigh against extension."). Attempting to create a judicial standard regarding when a prisoner who wishes to be placed into protective custody must be would entail involving the court in endless knotty issues to work out and invite an onslaught of Bivens actions. Such issues likely include, at a minimum, what crimes place inmates at increased risk, what other factors place inmates at risk, what are the violent tendencies of the particular prison population at issue, what are the security measures meant to protect inmates, and what are the resource limitations of placing inmates in protective custody. Such "matters of prison administration . . . are not subject to any clear legal standard so as to make a Bivens claim viable." Biron v. Upton, No. 4:15-CV-205-P, 2020 WL 85146, at *7 (N.D. Tex. Jan. 7, 2020); see also Olivier v. Baca, 913 F.3d 852, 858 (9th Cir. 2019) ("[C]orrections officials 'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'").

18

Given the absence of congressional action allowing Plaintiff's claims against Defendants, and the special factors counselling hesitation against extending a <u>Bivens</u> remedy to such claims, this Court should hesitate before determining it is well suited to consider and weigh the costs and benefits of allowing Plaintiff's claims to proceed. Therefore, the Court should decline to do so, and dismiss the claims against Defendants for failure to allege a cognizable legal theory.

### 3. The Court Should Dismiss Plaintiff's <u>Bivens</u> Claims Against Defendants in Their Individual Capacities Since Defendants are Entitled to Qualified Immunity

Even if it were otherwise appropriate to allow Plaintiff's <u>Bivens</u> claims to proceed against Defendants, qualified immunity shields them from liability because the facts alleged in Plaintiff's FAC establish that they did not violate a clearly established constitutional right.

#### a. Federal Officials are Immune from Suit Unless Their Conduct Violates a Clearly Established Constitutional Right

"The doctrine of qualified immunity . . . protects public officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[13] <u>Morales v. Fry</u>, 873 F.3d 817, 822 (9th Cir. 2017). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985); <u>see also</u> <u>Tarhuni v. Holder</u>, 8 F. Supp. 3d 1253, 1278 (D. Or. 2014) ("Qualified immunity can be properly raised in a pre-discovery dispositive motion such as a motion under Rule 12(b)(6)."). Indeed:

> By design, the issue of qualified immunity is usually resolved "long before trial." The Supreme Court has repeatedly stressed the importance of deciding qualified immunity "at the earliest possible stage in litigation" in order to preserve the doctrine's status as a true "immunity from suit rather than a mere defense to liability." Early determination is often possible "because qualified immunity most often turns on legal determinations, not disputed facts."

---

[13] The qualified immunity analysis is identical under both § 1983 and <u>Bivens</u>. <u>See</u> <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999).

1  Morales, 873 F.3d at 822.[14]

2  "The protection of qualified immunity applies regardless of whether the government

3  official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions

4  of law and fact.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009). "The qualified immunity

5  standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly

6  incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229

7  (1991). "This accommodation for reasonable error exists because 'officials should not err

8  always on the side of caution' because they fear being sued." Id.

9  "Once [an] official pleads qualified immunity, the burden is on the plaintiff to prove

10  two elements." Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938, 946 (9th Cir. 2017).

11  One, "a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ.

12  Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional

13  right." Id. at 232. "If no constitutional right would have been violated were the allegations

14  established, there is no necessity for further inquiries concerning qualified immunity."

15  Saucier v. Katz, 533 U.S. 194, 201 (2001).

16  Two, a "court must decide whether the right at issue was 'clearly established' at the

17  time of [the] defendant's alleged misconduct."[15] Pearson, 555 U.S. at 232. "Qualified

18  immunity is applicable unless the official's conduct violated a clearly established

19  constitutional right." Id. "A clearly established right is one that is 'sufficiently clear that

20  every reasonable official would have understood that what he is doing violates that right.'"

21  Mullenix v. Luna, 136 S. Ct. 305, 308 (2015); see also City of Escondido, Cal. v. Emmons,

22  139 S. Ct. 500, 503 (2019) ("[U]nless the right's contours [are] sufficiently definite that any

23  reasonable official in the defendant's shoes would [understand] that he [is] violating it," the

24  constitutional right is not clearly established.).

25

26  [14] For similar reasons, denial of qualified immunity may be challenged by an interlocutory appeal. See Forsyth, 472 U.S. at 527.

27  [15] "[J]udges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light

28  of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent;" that is, "[t]he rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust 'consensus of cases of persuasive authority.''"[16] D.C. v. Wesby, 138 S. Ct. 577, 589–90 (2018); see also Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (while this "does not require a case directly on point . . ., existing precedent must have placed the statutory or constitutional question beyond debate.").

Importantly, "the clearly established right must be defined with specificity." City of Escondido, 139 S. Ct. at 503. "[C]ourts . . . [may] not . . . define clearly established law at a high level of generality" to deny qualified immunity when a constitutional right is not clearly established by existing specific precedent. Id. Furthermore, "[i]t is not enough that the rule is [merely] suggested by then-existing precedent." Wesby, 138 S. Ct. at 590.

**b.    Plaintiff Fails to Allege That Defendants Were Unconstitutionally "Deliberately Indifferent" by Placing Him in the MCC's General Population After He Requested to Be Placed in Protective Custody**

Even if Plaintiff's claims against Defendants did not inappropriately attempt to extend a Bivens remedy to a new context, they would still need to be dismissed because Defendants would be entitled to qualified immunity. First, the facts Plaintiff alleges fail to state a constitutional violation. To prove deliberate indifference under the Fifth Amendment, a plaintiff must show: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious;[17] and (4) by not taking such measures, the defendant caused

---

[16]    The Supreme Court has yet to decide whether "a court of appeals decision may constitute clearly established law for purposes of qualified immunity." See City of Escondido, 139 S. Ct. at 503.

[17]    As explained above, the third element is slightly different (i.e., more difficult to meet) when an inmate brings a claim under the Eighth Amendment, but under the Fifth (or Fourteenth) Amendment requires a response akin to reckless disregard. See supra n. 3.

1  the plaintiff's injuries. <u>Castro v. Cty. of Los Angeles</u>, 833 F.3d 1060, 1071 (9th Cir. 2016).[18]

2  Plaintiff fails to allege sufficient facts on the second and third elements.

3       The "substantial risk of suffering serious harm" element is an objective test. <u>See</u> <u>id.</u>

4  at 1070. "The objective component requires consideration of both the severity of the

5  potential harm and the likelihood that such serious harm will occur." <u>See</u> <u>Apodaca v. Bd. of</u>

6  <u>Cty. Commissioners for Curry Cty., New Mexico</u>, No. CV 14-648MCA/CG, 2016 WL

7  9818321, at *2 (D.N.M. Nov. 30, 2016). "For a risk to be objectively 'substantial' it must

8  be more than merely possible, since prisons are, 'by definition,' institutions 'of involuntary

9  confinement of persons who have a demonstrated proclivity for anti-social criminal, and

10 often violent, conduct.'" <u>Smith v. Torres</u>, No. 116CV01924LJOJDP, 2019 WL 4139275, at

11 *2 (E.D. Cal. Aug. 30, 2019) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 (1984)); <u>see</u>

12 <u>also</u> <u>Brooks v. Warden</u>, 800 F.3d 1295, 1301 (11th Cir. 2015) ("[M]ere possibility is not

13 enough—the plaintiff must plausibly allege a strong likelihood of serious harm."). "For this

14 reason, 'speculative and generalized fears of harm at the hands of other prisoners do not rise

15 to a sufficiently substantial risk of serious harm.'"[19] <u>Smith</u>, 2019 WL 4139275, at *2.

16      Here, Plaintiff's claim against Defendant Rodriguez fails to allege conditions posing

17 an objective substantial risk of serious harm because Plaintiff only alleges that he informed

18 Rodriguez that he faced a general risk of harm based on the offense for which he was

19 arrested, rather than a specific threat against him.[20] "The most that can be taken from

20 [plaintiff's] complaint, even in the most favorable light, is that it was possible for the events

21 that transpired to occur . . . . But mere possibility is not enough—the plaintiff must plausibly

22

---

23 [18]     <u>Castro</u> involved a § 1983 claim against state officials and was decided before <u>Abbasi</u>

24 and <u>Hernandez</u>.

25 [19]     Even a single specific threat, without other circumstances indicating risk of violence,
   is typically insufficient by itself to constitute a substantial risk of serious harm. <u>See</u> <u>Milledge</u>

26 <u>v. Fla. Dep't of Corr. Sec'y</u>, 760 F. App'x 741, 744 (11th Cir.), cert. denied sub nom.
   <u>Milledge v. English</u>, 140 S. Ct. 79, 205 L. Ed. 2d 63 (2019)

27 [20]     Indeed, although it would still not adequately allege a substantial risk of suffering
   serious harm, Plaintiff did not allege that the basis of his arrest was known by other

28 detainees, including those that attacked him.

1    allege a strong likelihood of serious harm, and [plaintiff] has not here. Therefore, his claim

2    must fail." Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015).

3         Furthermore, given that the only threat articulated by Plaintiff was a generalized fear

4    of being attacked based on the offense of his arrest, Plaintiff has also failed to allege that

5    Defendant Rodriguez's response was akin to reckless disregard. There is no support for the

6    contention that the Constitution mandates every detainee charged with a sex offense must

7    be placed into protective custody upon request. But since that was the only information

8    Plaintiff alleges Rodriguez should have considered, it was not reckless to determine that

9    Plaintiff could be placed within the MCC's general population. Since Plaintiff's claim

10   against Rodriguez fails to allege either a sufficiently substantial risk of serious harm, or

11   reckless disregard of the risk of such harm, Rodriguez is entitled to qualified immunity.

12        A similar analysis applies to the claim against Defendant Kelly. In addition, however,

13   Plaintiff failed to allege that any of her acts caused him "serious harm." While the assault

14   that followed Plaintiff's initial placement into general population would constitute serious

15   harm, the mental anguish and emotional distress Plaintiff alleges when he was again placed

16   in general population after he was treated at the hospital does not. See Caldwell v. Dep't of

17   Corr. for City of New York, No. 14-CV-5551JSARL, 2015 WL 428033, at *4 (E.D.N.Y.

18   Jan. 30, 2015) (mental and emotional distress of being a sentenced inmate without

19   allegations of physical harm or specific threat fails to sufficiently allege objectively serious

20   harm); Green v. City of N.Y. Dep't of Corr., No. 06 Civ. 4978, 2008 WL 2485402, at *6

21   (S.D.N.Y. June 19, 2008) (allegation of death threats, absent a claim that physical harm

22   actually existed or was imminent, insufficient to constitute a substantial risk of serious

23   harm); Cruz v. Hillman, 01 CIV. 4169, 2002 WL 31045864, at *8–9 (S.D.N.Y. May 16,

24   2002) ("Fear of assault does not constitute a 'sufficiently serious' injury sufficient to state a

25   claim under the Eighth Amendment."). Furthermore, Kelly's act of placing Plaintiff into

26   general population did not constitute a reckless disregard of any substantial risk of serious

27   harm. Therefore, Defendant Kelly is also entitled to qualified immunity.

28

*3:18-cv-00434-CAB-NLS*

       c.    **Defendants Did Not Violate a Clearly Established Constitutional Right by Placing Plaintiff in the General Population**

Even if Plaintiff's claims appropriately alleged violations of a constitutional right, Defendants would still be entitled to qualified immunity as no clearly established precedent provided sufficient notice that their actions violated such a right. In other words, no clearly established precedent notified Defendants that they had to honor Plaintiff's request for protective custody based on his generalized fear that being charged with a sex offense might make him vulnerable to violence from other inmates. Cf. <u>Powell v. Sheriff, Fulton Cty. Georgia</u>, 511 F. App'x 957, 964 (11th Cir. 2013) ("[T]here is no constitutional right, much less a clearly established one, to be held in a particular cell or a separate area of a [j]ail and not be placed back in the general [j]ail population."); <u>Hundley v. Parker</u>, 69 F.3d 537 (6th Cir. 1995) ("[T]here was no clearly established right for plaintiff to be housed separately from inmates who had previously been general population prisoners, at least in the absence of a documented conflict with one of those prisoners."); <u>Shields-Nordness v. Galindo</u>, No. 18-CV-1426 (PJS/DTS), 2019 WL 1003114, at *7 (D. Minn. Mar. 1, 2019) ("[T]he Court cannot find that [plaintiff] had a clearly established right not to be transferred into the general population."). Therefore, Defendants are entitled to qualified immunity and the Court should dismiss Plaintiff's claims against them.

## IV.  CONCLUSION

For the reasons stated above, the Court should dismiss the <u>Bivens</u> claims against Defendants because: 1) <u>Bivens</u> claims are unavailable against federal employees in their official capacities; 2) in the absence of congressional action, the Court should decline expanding a <u>Bivens</u> remedy to cover claims such as Plaintiff's, and 3) Defendants are entitled to qualified immunity.

Date; March 10, 2021

                              RANDY S. GROSSMAN
                              Acting United States Attorney

                              s/ *George Manahan*
                              George Manahan
                              Assistant United States Attorney

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

STEVE MARQUEZ,

          Plaintiff,

     v.

UNITED STATES, et al.

          Defendants.

Case No.: 18-cv-00434-CAB-NLS

**PROOF OF SERVICE**

IT IS HEREBY CERTIFIED THAT:

I, George V. Manahan, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of the foregoing: INDIVIDUAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED By causing a copy to be deposited in the United States Mail at San Diego, California, in an envelope bearing the requisite postage, addressed to:

Steve Marquez
BI-7401
Mule Creek State Prison
PO Box 409040
Ione, CA 95640

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 10, 2021.

s/ *George Manahan*

Assistant U.S. Attorney George Manahan
Email: george.manahan@usdoj.gov
Attorney for United States