Steve Marquez
In Pro Per
Steve Marquez CDCR # BI-7401
Facility B; BLDG 7; CELL 120
P.O. BOX 409040
Ione Ca, 95640

FILED
Apr 19 2021
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY s/ JenniferS DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

Steve Marquez,           ( Case No: 3:18-CV-00434-CAB-NLS
        Plaintiff,       (
    v.                   ( OPPOSITION TO DEFENDANTS
C. Rodriguez; L. Kelly,  ( MOTION TO DISMISS
        Defendants.      (

## I. PROCEDURAL HISTORY

On February 23, 2018, Plaintiff Steve Marquez filed a Pro-se Complaint against the United States, the BOP, (Bureau of Prisons), Metropolitan Correctional Center San Diego (M.C.C), Warden David L Young, and three unnamed prison officials in their individual and official capacities. On April 25, 2018, the court granted plaintiffs motion to proceed in forma pauperis. The Court also dismissed, sua sponte persuant to the Prison Litigation Reform Act (28 U.S.C. § 1915(e) and 1915(a)(b)), Plaintiff's claims:

- Persuant to 42 U.S.C. § 1983;
- Persuant to Bivens v. Six Unknown Agents of the Federal

1.

bureau of narcotics, 403 U.S. 388 (1971), against the United States and the BOP; and against M.C.C. Warden Young.

The remaining claims,

- Federal Tort Claims Act (FTCA) against the United States and,

- Eighth Amendment Rights and Bivens claims against three unnamed defendants in their official and individual capacities;

were found by the courts to meet the requirements for proceeding past the sua sponte screening required by 28 U.S.C. § 1915(e)(2) and 1915A(b).

On August 2, 2019, the Court granted the United States' motion to dismiss with prejudice the FTCA Claims Against it, concluding the Court lacked subject matter Jurisdiction based on the FTCA's discretionary function exception.

On February 24, 2020, Plaintiff filed a first Amended Complaint (FAC). The FAC claims Eighth Amendment Rights violations of "Deliberate indifference" and Bivens claims against Defendants in their official and individual capacities. Defendants then filed a motion to dismiss against them.

## II. FACTS IN FIRST AMENDED COMPLAINT

On or about August 13, 2016, Plaintiff was booked into the M.C.C. after being charged with a sex offense. During his classification interview, Plaintiff told Defendant Rodriguez that he wanted to be placed

2.

in protective custody to be protected from other inmates because of the crime for which he was arrested. Instead, Rodriguez placed plaintiff into the M.C.C's general population, (GP). During the classification interview, Rodriguez gave plaintiff an emergency contact form and said "here, this is for when something happens to you in prison." Rodriguez also told plaintiff in response to his concernes about being attacked by other inmates, to "tell the other inmates your here for selling drugs".

Not long after being house, Plaintiff's life was threatened by several inmates, was moved to a back corner of the Dormitory, and forced to perform countless repetitions of squats causing him to become dizzy, exhausted, and was forced to continue until he collapsed and lost consciousness. The next day, Plaintiff experienced pain, fever, cold sweats, swelling of his face and body, vomiting, loss of apetite, uranation of blood, shortness of breath, complete loss of leg function, dizziness, headache, and mental and emotional distress among other injuries. When he notified a prison official, he was told to make an appointment with medical staff. Plaintiff notified a nurse, who scheduled him to see medical staff later that day.

The medical staff evaluated him, including drawing blood for lab testing.

The next day, plaintiff was called

3.

back by the medical staff for additional bloodwork and to be provided intravenous fluids (IV). Similar treatment was provided the next day. The day after that, plaintiff was transferred to Alvarado Hospital, where he was provided inpatient care for the next 10 days. At Alvarado Hospital, Plaintiff was diagnosed with acute renal failure with acute tubular necrosis and severe dehydration, acute rhabdomyolosis, and other acute and chronic complications.

After discharge from the hospital, Plaintiff returned to the M.C.C and was interviewed by Defendant L. Kelly. Plaintiff explained what had previously occured and again requested to be placed into protective custody. Defendant L. Kelly chose instead to house Plaintiff in the same dormitory he had previously been assaulted. Plaintiff stayed at the MCC for approximately one month until the federal charges were dropped. He was subsequently housed at California State Prison, Corcoran, and later at Mule Creek State Prison. The Time spent outside of Protective Custody at the MCC after his return from the hospital caused Plaintiff mental anguish and emotional distress in addition to the symptoms he continued to suffer from.

Defendants C. Rodriguez and L. Kelly's failure to house him in protective custody constitutes deliberate indifference in violation to his Eighth Amendment

4

rights under the United States Constitution.

## III. ARGUMENTS

1. DEFENDANTS MOTION CLAIMS THAT DEFEANDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE DEFEANDANTS ACTIONS DO NOT VIOLATE ESTABLISHED CONSTUTIONAL RIGHTS

The Supreme Court has held that Federal Courts may award damages for violation of the Constitution and other federal laws against Federal Officials and employees as part of their "Federal question" jurisdiction. Bivens v. Six Unknown Named Agents of Federal Bureau of Naccotics, 403 U.S. 388, 392-97, 91 S.Ct. 1999 (1971)(Fourth Amendment case). The Court has said that "Bivens established that the victims of a Constitutional violation by a Federal agent have a right to recover damages against the official in Federal Court despite the absence of any statute conferring such a right." Hartman v. Moore, 547 U.S. 250, 254 n.2, 126 S.Ct. 1296 (2002)(quoting Carlson v. Green, 446 U.S. 14, 18, 100 S.Ct. 1468 (1980)).

Federal question jurisdiction is authorized by 28 U.S.C. § 1331(a), which gives the district courts "original jurisdiction of all civil actions under the Constitution, laws, or treaties of the United States."

Bivens Actions were authorized by the

5.

Supreme Court in prisoners' Eighth Amendment suits, see Carlson v. Green, 446 U.S. 14, 18-19, 100 S.Ct. 1468 (1980); see Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1920 (1994) (prisoner-prisoner assault case). In Carlson, the Court held that the fact that the defendants are prison officials is not a "special factor counseling hesitation", in permitting a Bivens suit to go foreward. 446 U.S. at 18-19; accord, McCarthy v. Madigan, 503 U.S. 140, 151-52, 112 S.Ct. 1081 (1992).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" This 'does not impose a probability requirement at the pleading stage', but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evedence of the necessary element."

Plaintiff's medical records from Alvarado hospital (Exhibit A) document a conflict between the plaintiff and the assaulting inmates, so if the Courts do not grant Defendant's motion to dismiss, then upon discovery, MCC institutional medical records may show that I told medical staff that I was assaulted when explaining how I got my injuries. Thus a documented report may exist of my assault.

A Bivens Claim requires that "a plaintiff... plead that [a] Government Official defendant,

6.

through the officials own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Defendant C. Rodriguez was deliberately indifferent to the substantial risk of serious harm or injury by placing plaintiff in general population despite being a "suspect classification" detainee and despite his requests to be placed in protective custody and defendant C. Rodriguez knew and disregarded a condition posing a substantial risk of serious harm and injury by directing and advising plaintiff to lie about his alleged charges to other G.P. inmates. The fact that Defendant C. Rodriguez sat and contemplated a lie for the plaintiff to tell other G.P. inmates, shows that the Defendant fully understood that I was at risk of serious harm and injury because he concluded that if I told them about my charges to other G.P. inmates, I would suffer serious injury. This shows that Defendant C. Rodriguez was deliberately indifferent and his actions were akin to reckless disregard because he understood that lying to other inmates could possibly avert them from making the Plaintiff the subject of attack. Defendant could of easily avoided placing Plaintiff in a dangerous situation that was clearly obvious to him, but deliberately chose not to. Lying is a defense mechanism that people often tell to

7.

avoid harm and preserve life to self when in a dangerous situation where distancing yourself from a situation that a prison official has placed you in is unavoidable. Therefore, Defendant **must** have known he was placing Plaintiff in a dangerous situation by cognitively making the link between; "lying to avoid harm and preserve life to self," while "being in a dangerous situation". As a direct result of Defendants C. Rodriguez' neglegent housing, reckless disregard for Plaintiffs safety and deliberate indifference, Plaintiff suffered a very severe and life threatening injury, damage to vital organs, pain, suffering, mental anguish and emotional distress. Defendants C. Rodriguez' actions clearly and obviously constitute Cruel and unusual punishment and violate Plaintiffs Constitutional Rights under the United States constitution.

  Similar obvious circumstances also apply to defendant L. Kelly in the sense that, upon my second classification interview, conducted by Defendant L.Kelly, she clearly understood that I was returning back to M.C.C from Alvarado Hospital after suffering severe life threatening injuries, because I told her I did. I also told her the reason I was in the hospital. I told her that I was assaulted by other G.P. inmates and that the injuries were severe and life threatening

and because of that I wanted to be placed in P.C. A reasonable person would know, after being informed with that knowledge, that placing an inmate that had just returned from the hospital after recovering from life threatening injuries suffered from several other inmates who almost killed him is not only gross neglegence, reckless disregard and deliberate indifference, but also obvious, illegal and a clear violation of Plaintiffs Constitutional Rights. Defendant L. Kelly's actions were unlawful and unconstitutional and caused great mental and emotional distress. The defendant denied Plaintiffs Eighth amendment Rights to the United States Constitution.

## 2. DEFENDANTS MOTION CLAIMS THAT PLAINTIFF FAILS TO PROVE THAT DEFENDANTS WERE UNCONSTITUTIONALLY "DELIBERATELY INDIFFERENT"

To prove deliberate indifference, a plaintiff must show 1) The Defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

a) Defendant C. Rodriguez made the intentional decision by placing Plaintiff in G.P. instead of P.C. despite his requests not to be, the key factor that proves intention is the fact that; he

ignored plaintiffs requests and; he instructed Plaintiff to lie to other inmates about his actual charges. When a prison official goes as far as making up a lie for an inmate to tell, this shows forethought, deception, and deliberate planning to acheve a desired objective. This objective was to deliberately, maliciously and wantonly place Plaintiff in G.P. with no consideration to any other alternative.

b) Defendant L. Kelly's conduct clearly violates an "established statutory or constitutional right of which a reasonable person would have known", because upon my return from the hospital, I informed her of; 1) all the injuries that occured to me, 2) why the injuries occured and 3) where the injuries occured. Prison officials have a duty to use reasonable care to ensure the safety of inmates. A reasonable person must know that placing an inmate back into a dangerous situation where he was severely assaulted by other inmates is an absolute disregard to that inmates safety. To clearly understand that an inmate got severly assaulted in G.P. and to make the decision to place him back in the same dorm where he got assaulted is obviously intentional and a clear violation of his Constitutional Rights.

2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

a) because of Defendant C. Rodriguez's neglegent housing and deliberate indifference, Plaintiff suffered serious life threatening harm including kidney failure, tubular necrosis, severe dehydration, acute rhabdomyolysis with increased CPK and over exertion.

b) because of Defendant L. Kelly's neglegent housing and deliberate indifference, Plaintiff was at substantial risk of suffering serious harm. Plaintiff told Defendant L. Kelly that he feard for his life to be placed back into G.P. because he feard he would be harmed again and Defendant disregarded this crucial bit. The substantial risk of suffering serious harm would be obvious to a normal person.

3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstance would have appreciated the high degree of risk involved - making the consequence of the defendants conduct obvious;

a) by Defendant C. Rodriguez understanding that placing Plaintiff in G.P. and having him lie to other inmates about his charges is not reasonable measures to abate a serious risk. The consequence of the defendants conduct was obvious to him which is

why he instructed Plaintiff to lie. Making up a lie for plaintiff to tell shows he knew he was intentionally placing Plaintiff in a dangerous situation.

b) and Defendant L. Kelly failed to abate the risk of serious risk to Plaintiff by placing him back with his assailants. A reasonable officer would know that placing an inmate back with his assailants after Plaintiff told her he didn't want to go back, is an obvious disregard for reasonable safety measures.

4) and by not taking such measures, the Defendant caused the plaintiff's injuries;

a) Defendant C. Rodriguez clearly understood the risk of placing Plaintiff into G.P. and failed to take appropriate measures to avoid Plaintiffs injuries.

b) Defendant L. Kelly failed to take appropriate measures to avoid Plaintiffs injuries. She understood the element of prior danger and injuries because she was notified by Plaintiff and still disregarded an appropriate measure of safety.

The "substantial risk of suffering serious harm" element is an objective test. "The objective component requires consideration of both the severity of the potential harm and the likelihood that such serious harm would occur." Defendant

understood that placing plaintiff into G.P. would cause a high likelihood of harm to plaintiff because he instructed Plaintiff to lie. This is because he knew that lying could help avoid injury in an enviornment where Defendant knew danger existed. It is usually understood that "suspect classification" inmates who are assaulted usually suffer substantial injury by inmates. Plaintiffs injuries were extremly substantial and even life threatening. Defendant Rodriguez knew that the likelihood of harm was not only possible, but obvious and an absolute certainty. If Defendant honestly believed there was no element for the plaintiff, of being in genuine danger if he was honest about his charges, then there would be no reason for Defendant to create a lie for him.

  Defendant L. Kelly could have easily considered the severity of the potential harm to Plaintiff by his previous injuries and that placing Plaintiff with those same inmates would create an increadible likelihood that such serious harm would reoccur.

### 3. DEFENDANTS MOTION CLAIMS THERE IS NO CLEARLY ESTABLISHED VIOLATION OF CONSTITUTIONAL RIGHTS BY PLACING PLAINTIFF IN GENERAL POPULATION

Correctional officers have discretion on where to house inmates unless it is done with deliberate indifference to a particular inmate.

Based on Defendant C. Rodriguez's comments toward the Plaintiff, such as "here, this is for when something happens to you in prison" (regarding my emergency contact form) and "Just tell the other inmates your here for selling drugs". Instructing Plaintiff to lie to other inmates to hopefully not get attacked, indicates that Rodriguez knew exactly what he was doing. Not only is this deliberate indifference that amounts to Eighth Amendment Rights Violations, But also amounts to gross neglegence, wanton infliction of pain, and reckless disregard.

Defendant L. Kelly was also deliberately indifferent by placing plaintiff into G.P. after he was already assaulted and removed from there to go to the hospital. Defendants actions amount to Eighth Amendment Rights Violations because although Plaintiff did not suffer any new physical injury, he suffered mental and emotional injury. A reasonable officer would know that placing an inmate into the same housing unit where he was previously assaulted and sent to the hospital poses an extremely likely reoccurance of serious harm. Defendant L. Kelly knew I was assaulted because I told her and she disregarded this and placed me back anyways even after I told her

I felt unsafe there. This is clearly akin to reckless disregard. Defendant did not ask if there was a documented conflict between me and the other inmates and also failed to document the conflict even after I told her of the assault. She even disregarded my pleas not to be placed back in G.P. This constitutes cruel and unusual punishment. Defendant L. Kelly clearly understood my situation including the threats and harm on my life by G.P inmates. Therefore Kelly's act of placing plaintiff into G.P. constitutes a reckless disregard of substantial risk of serious harm to Plaintiff. Therfore, Defendants are not entitled to qualified immunity and the court should not grant Defendants motion to dismiss.

### 4. CONCLUSION

For the reasons stated above, the court should not dismiss the bivens claims and Eighth Amendment Rights violations against defendants because they are not entitled to qualified immunity.

Dated March 30, 2021

Steve Marquez BI-7401
Facility: B  Bldg: 7  cell: 120
P.O. Box 409040
Ione, Ca 95640

*Steve Marquez*

1 Steve Marquez
2 In Pro Per
3 Steve Marquez CDCR# BI-7401
4 Facility: B; Bldg: 7; Cell # 120
5 P.O. Box 409040
6 Ione Ca, 95640
7
8              UNITED STATES DISTRICT COURT
9              SOUTHERN DISTRICT OF CALIFORNIA
10
11  Steve Marquez,       ( Case No: 3:18-CV-00434-CAB-NLS
12     Plaintiff          (
13        V.              ( PROOF OF SERVICE
14  United States et al,  (
15     Defendants.        (
16           IT IS HEREBY CERTIFIED THAT:
17     On Apr. 1     2021, I Steve Marquez, sent an
18 opposition to Defendants motion to dissmiss,
19 To the United States District Court Southern District
20 of California, Address; 333 West Broadway, Suite 420,
21 San Diego Ca, 92101 and a copy of opposition along
22 with a copy of proof of service to; Randy Grossman
23 Acting United States Attorney, Office of the U.S Attorney,
24 880 Front St, Room 6293, By placing it in an envelope
25 and placing it in the institution mail box.
26
27     Persuant to 28 U.S.C. 1746, I Steve Marquez, declare
28 under penalty of perjury that the foregoing is true and

correct.

Dated: 3-30-21

*[signature: Steve Marquez]*

Steve Marquez
CDCR# BI-7401
Facility: B; Bldg: 7; Cell #120
P.O. Box 409040
Ione Ca., 95640

// // // // // // // //

Steve Marquez
BJ7401  Facility: B
Bldg: 7  cell: 120
P.O Box 409040
Ione Ca, 95640

"LEGAL MAIL"


CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
RECEIVED

"LEGAL MAIL"

United States District Court
Southern District of California
Office of the Clerk
333 West Broadway, Suite 420
San Diego Ca, 92101

COURT OR ATTORNEY GENERAL'S OFFICE USE ONLY

A. GAETANO [signature] 91860 4/6/21

Is there a reason this keeps coming back